In the Matter of the Final Judicial Settlement of the Accounts of
  Alonzo Reed, as Committee of the Person and Estate of Anna
  L. Knapp, a Lunatic, Deceased.

Helen C. McClain, as Administratrix, etc., of Anna L. Knapp,
  Deceased, Appellant; Alonzo Reed, as Committee, etc., of
  Anna L. Knapp, a Lunatic, Deceased, Respondent.

*A trust for the support of a lunatic is in exoneration of the lunatic's estate.*

Where a testator gives his entire estate to trustees, directing them to support
  therefrom, during her life, his wife, who is a lunatic, the provision thus made for
  the wife must be deemed to have been made in exoneration of the wife's separate
  estate, and a committee of her estate is chargeable with moneys belonging to it
  which he has paid, in exoneration and in reimbursement to the trust estate of
  expenditures made for the support of the lunatic, to one of the trustees under
  the will to whom he intrusted the care of the lunatic.

APPEAL by Helen C. McClain, as administratrix, etc., of Anna L.
Knapp, deceased, from a judgment of the Ulster County Court,
entered in the office of the clerk of the county of Ulster on the
22d day of October, 1896, upon the decision of the court upon the
final judicial settlement of the accounts of Alonzo Reed, as com-
mittee of the person and estate of Anna L. Knapp, a deceased
lunatic.

*John D. Eckert*, for the appellant.

*Howard Chipp*, for the respondent.

LANDON, J. :

The respondent, Alonzo Reed, was appointed the committee of
the person and estate of Anna L. Knapp, a lunatic, September 19,
1889. She was the widow of Edward W. Knapp, who died April
23, 1889, leaving no issue surviving him.

By his will he devised and bequeathed all his estate, amounting to
about $25,000, to three trustees in trust, " to be nursed, managed
and invested in the best manner possible," directing them, after
the payment of a few small legacies, " to use the balance of my
estate and the income therefrom (1) to the support, care and com-
fort of my wife, Anna L. Knapp, so long as she may live, and (2),

so far as necessary and possible, to the support of my sister, Maria Stringham, so long as she may live. Upon the death of either my said wife or sister, I direct my said trustees to apply said balance and income to the support and maintenance of the survivor so long as she may live," and making an ultimate disposition of the remainder, if any should be left. He thus intended that his wife should be taken care of in any event, and that his sister should at the same time have such necessary support as the support, care and comfort of his wife would permit his estate to furnish her with.

The trustees qualified and took charge of Mr. Knapp's estate. The lunatic had an estate of her own. The committee charged himself upon account thereof with $2,047.08. He credited himself with expenditures upon account of the lunatic in the sum $1,997.08, leaving in his hands $50 for commissions. The decree appealed from settled the account as presented and allowed the committee to retain the $50 as commissions.

The evidence shows that the committee intrusted the care of the lunatic and the disbursements upon her account to one of the trustees, and then reimbursed him, and thus the trust estate therefor. An account filed by the committee with the County Court and settled *ex parte* about October 29, 1890, shows such reimbursements to the trust estate on account of expenditures for the support, benefit and maintenance of the lunatic to the amount of $1,559.81. An account filed by the trustees and adjusted by the surrogate August 31, 1891, charges the trust estate with $1,152.51, received "from Alonzo Reed of estate of Anna L. Knapp." The evidence tends to show that the difference between these two sums, $407.30, was the money of the lunatic's estate furnished by the committee to one of the trustees to pay sundry bills incurred upon account of the lunatic.

The account of the committee, presented upon this hearing, consists of two schedules, one for $1,152.51, being the amount the trustees charge themselves with, and the other, for $844.57, embracing, as we infer from the evidence, in the absence of any specific findings by the County Court, the $407.30 above mentioned, and $437.27, which the committee himself expended, thus leaving $50 his hands.

The main question is, whether the provision in the husband's will for the support of his widow should not have been resorted to in exoneration of the separate estate of the wife. Upon the facts above presented, this question is free from embarrassment, since the committee in part reimbursed the trust estate, and in part furnished the trustees with the money by which they exonerated the trust estate. The authorities answer the question in favor of the appellant. A trust for the support of the lunatic is in exoneration of the private property of the lunatic. (Story's Eq. Juris. § 1364a; Lewin on Trusts, *614, *967 ; *Matter of Weaver*, 21 Ch. Div. 615.)

It is the duty of the husband to support his wife (*Goodale v. Lawrence*, 88 N. Y. 513), and this although she may have an estate of her own, unless she elect to support herself. (*Jaques v. Methodist Episcopal Church*, 17 Johns. 548.) When the husband, by his will, provided that his estate should continue to be charged with his wife's support, he manifested his intention that the obligation which rested upon him while living should be borne by his estate after his death.

If it should be held otherwise, the intention of the husband would be defeated, and the wife might take nothing from an ample provision in her favor. Provisions in a will for the support of a wife will receive the most favorable construction to accomplish the purpose intended. (*Thurber v. Chambers*, 66 N. Y. 42.) The rule in favor of the wife in nowise contravenes the rule so fully supported by the cases cited by the respondent's counsel and relied upon by the learned court below (18 Misc. Rep. 285), to the effect that it is the paramount duty of the committee to minister to the care and comfort of the lunatic so far as the funds in his hands will reasonably allow, without reference to the interests of the next of kin, heirs at law or expectants. We do not relax that rule by holding that when the committee impairs the lunatic's estate, in order to protect the trust estate from expenses for which the latter was primarily liable, he fails in his duty.

Tested by this rule, the committee should be charged with the amount in which he thus protected the trustees from expenditures which they ought to have made for the lunatic's support, care and comfort.

Among the expenditures for which the committee claims credit

are items for the repairs of the lunatic's house, amounting to $617.75, and some other items for taxes and insurance. As the account is rendered, $333.48 of these items were expenditures by the trustees, and $227.27 by the committee. Ostensibly, these expenditures were for the benefit of the lunatic's estate, but the facts show that they were for the benefit of the trust estate. The deed for the house and lot stood in the name of the wife. In 1870 the husband gave his bond to the Poughkeepsie Savings Bank for $3,000, and both husband and wife united in a mortgage to the bank to secure its payment. In 1878 the bank assigned the mortgage to the husband. He did not record the assignment, but after his death his trustees did record it and foreclosed the mortgage, making the committee a party to the action, and the trustees purchased the house and lot upon the foreclosure sale for $5,630, the amount found due by the judgment, including costs and referee's expenses. The expenditures upon the house and lot were made in expectation of this foreclosure. The trustees, in an accounting of the trust estate, estimate the value of this house and lot at $6,000.

The excuse for this foreclosure is sought in a paper without date, written in lead pencil, in the handwriting of the husband, Mr. Knapp, and found by one of the trustees after his death. The following is the main part of this paper:

" I find, by anxious thought and examination, that your health will not permit you to take charge of the little property that I shall leave for the joint support of yourself and Maria. I have concluded to change the original will, and put it in charge of the three trustees, who I firmly believe are good, kind and honest men, that is, I have put in all I have a legal right to put in. The title of the house and lot is in your name, consequently I cannot do anything with that, and it must be left for you to do, viz. : Assign the deed to the trustees and let it go in with the part already given them. I think this much the best plan, for it will take less expense to handle than in a separate state; besides, there is where it belongs."

This paper was not addressed to any one, and had never been delivered by the husband to any one. At best it was mere evidence that at some time Mr. Knapp contemplated writing such a letter to his wife, but never did so. It certainly could not bind her or her property if it had been delivered to her, in the absence of evidence

of her assent to its propositions.  The committee consulted her upon the contents of the paper after it was found, but he frankly states that she was not perfectly clear.  She said she wanted to do precisely what her husband wanted her to do, but said nothing that indicated her understanding of his wishes.  It was no guide for the committee or trustees, and should have been given no effect, except to show their good faith.  The judgment of foreclosure in favor of the husband's trustees of a mortgage upon the wife's estate given to secure the husband's debt, which he had paid, was not challenged upon the hearing below, and perhaps could not have been attacked collaterally, but we think the facts justify us in charging the committee with the moneys paid from the lunatic's estate to improve the property after the foreclosure was resolved upon.  They were paid for the benefit of the trust estate.

We conclude to credit the committee with the $437.37 expended by him over and above the amount with which he protected the trust estate.  It was conceded by the appellant that $190 expended in the inquisition and other legal proceedings were properly chargeable to the lunatic's estate.  The committee paid her funeral expenses, $141.75.  The trust estate was for her support during life. If she had had no separate estate, doubtless the trust estate from necessity should be chargeable with this expense.  But as she had such an estate, the committee might incur this expense in anticipation of its allowance by her administrator who would properly be chargeable with it.

We have examined every item to see which estate, as between the two, ought to have borne the charge of it.  There are some items which either estate would probably be credited with if it had incurred the expense of them.  Thus, the item of $115 for compensation to servants for extra attention to the lunatic, and various charges for small items to gratify the taste, caprice or whims of the lunatic, and thus to promote her comfort, were, no doubt, properly incurred by the committee.  It is difficult to draw the exact line of division. We conclude to charge the committee with the $1,152.51, the amount paid by the committee in exoneration of the trust estate, and the $407.50 furnished the trustees by the committee, less the $115 above mentioned.  Total, $1,444.81.  This gives the trustee a credit of $602.27, which is as much as he is entitled to.

We have examined the case with reference to surcharging the committee's account for personal property which appellant alleged he ought to have received and accounted for, without finding evidence sufficient to require us to do so.

The decree of the County Court is reversed, and it is adjudged that the committee be charged with $1,444.81, with interest at four per centum per annum from August 2, 1890, the date of the committee's last payment to the trust estate, and with the costs of this appeal.

All concurred.

Decree of the County Court reversed, and a decree directed to be entered that the committee be charged with $1,444.81, with interest at four per cent from August 2, 1890, with costs of this appeal to the appellant.