In the Matter of the Application of HARRY B. CHAPMAN for the Removal of JEFFREY P. THOMAS, as Committee of the Person and Estate of NANCY C. WARNER, an Incompetent, Appellant; HARRY B. CHAPMAN, Special Guardian, Respondent.

*Lunatic — removal of the committee under a petition presented by the nephew of the lunatic — delay in appointing a special guardian — items of account for which vouchers need not be presented.*

The Supreme Court may avail itself of information contained in a petition for the removal of the committee of a lunatic presented by the son of one of the two sisters of the lunatic, especially where such petition is supported by the affidavit of the petitioner's mother, and the other sister of the lunatic is the wife of the committee.

*Semble,* that the court, in its discretion, might refuse to take action upon the nephew's petition.

The fact that a special guardian for the lunatic was not appointed in the proceeding, which finally resulted in the removal of the committee, until the report of the referee appointed to take and pass upon the committee's accounts was ready for presentation to the court, does not render the removal of the committee irregular, as the proceeding does not acquire the character of a removal proceeding until the court has determined that there is probable cause to believe that the committee has been unfaithful to his trust.

Section 2342 of the Code of Civil Procedure, authorizing the appointment of a special guardian for the purpose of filing a petition on behalf of a lunatic for the removal of the committee of the lunatic, does not necessarily prescribe the practice to be followed when the Supreme Court, for reasons satisfactory to itself, directs an examination of the accounts and conduct of the committee.

The expense incurred by the committee for carriage hire to enable the lunatic's mother, who had means of her own, to visit the lunatic, and for boxes of delicacies sent to the lunatic, is not a proper charge against the estate.

Section 2729 of the Code of Civil Procedure, relating to an accounting by an executor or administrator, and limiting to $500 the amount of claims which may be allowed in the absence of vouchers establishing their payment or of other specified proof thereof, is applicable to an accounting by the committee of a lunatic.

APPEAL by Jeffrey P. Thomas, as committee of the person and estate of Nancy C. Warner, an incompetent, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 9th day of December, 1898, judicially settling the accounts of the appellant, removing him from his trust, appointing his successor and directing

him to pay to such successor $7,266.87, belonging to the estate, and the income thereof from January 14, 1896, less certain payments ordered by the court for the support of the incompetent and for costs.

This proceeding was instituted by a petition presented by the nephew of the incompetent praying for the removal of the committee and for an accounting.

*Charles Irving Oliver* and *Albert C. Tennant*, for the appellant.

*Arthur L. Andrews*, for the respondent.

LANDON, J.:

The lunatic is an unmarried woman having two sisters, one of whom is the wife of Jeffrey P. Thomas, the committee of the lunatic's person and estate, and the other is the mother of Harry B. Chapman, the petitioner. The committee objects that the petitioner has no right to institute this proceeding. His petition is supported by the affidavit of his mother. It probably is true that the court, in its discretion, could refuse to take action upon the nephew's petition, if it seemed to it proper to refuse. But "the jurisdiction of the Supreme Court extends to the custody of the person and the care of the property" of the lunatic; the court "must preserve his property from waste or destruction, and out of the proceeds thereof must provide for the payment of his debts, and for the safe keeping and maintenance, and the education, when required, of the incompetent person and his family." This jurisdiction "must be exercised by means of a committee." (Code Civ. Proc. §§ 2320, 2321, 2322.) The committee "is subject to the direction and control of the court by which he was appointed with respect to the execution of his duties; and he may be suspended, removed or allowed to resign in the discretion of the court." (§ 2339.) Thus the lunatic is the ward of the court, and the committee is its officer or arm to execute the duties devolving upon the court. (*Matter of Otis*, 101 N. Y. 580.) The jurisdiction is of an equitable nature. In England it was early supposed to belong to the crown, and not to the court, except as delegated by the crown to the chancellor or some other officer; finally by statute the jurisdiction was committed to the chancellor. This peculiarity in regard to the origin of the chancel-

lor's jurisdiction apparently led it to be doubted in this State, whether the care of incompetent persons was part of the general jurisdiction in equity which devolved upon the chancellor, and thus led to chapter 12 of the Laws of 1788 (Laws of New York, 1777 to 1801 [new edition], vol. 2, 617), vesting the chancellor with the jurisdiction which is now vested in the Supreme Court. (*Matter of Brown*, 4 Duer, 613.) The jurisdiction is conferred without restriction (*Matter of Wendell*, 1 Johns. Ch. 600; *Matter of Tracy*, 1 Paige, 580; *Matter of Mason*, 1 Barb. 436), except that where the practice is prescribed in some particulars, other practice in such particulars is by implication forbidden. In other respects the court may adopt such practice as the particular exigency requires.

While it may be true that the petitioner had no special right to institute this proceeding, it was his privilege to give information to the court, and the court, in its discretion, might act upon it. As the court said in *Agricultural Insurance Co. v. Barnard* (96 N. Y. 525) the court "had authority to proceed and make such an order in the premises as the statute authorized, however the facts may have been brought to its knowledge." This objection is, therefore, not well taken.

The committee objects that no special guardian was appointed for the lunatic in the first instance, and not until after a referee had been appointed by the court to take, examine and pass upon his accounts for the information of the court, and the referee's report was ready for presentation to the court. If the views already expressed are correct, the proceeding thus far was to enable the court to ascertain from the committee's own accounts whether its servant had been faithful to the trust the court had confided to him. If he had been, the court need not proceed further except to approve the accounts and to direct their filing. If there was probable cause for the court to believe that he had been unfaithful, then it was proper for the court to appoint a special guardian for the lunatic, to take up the proceeding, adopt the report of the referee, or ask for a further hearing in respect to the accounts, and if so advised move for an adjudication by the court upon the accounts and ask for the removal of the committee. In the present case the special guardian did adopt the report of the committee, moved for its confirmation

and for the removal of the committee. The lunatic is, therefore, properly before the court, and the order of the court is binding upon her, having been obtained in the judgment of the law by her procurement. No doubt it may be opened in equity for fraud or mistake, but otherwise it is conclusive. ·

The provision of section 2342 for appointing a special guardian for the purpose of filing a petition in behalf of the lunatic for the removal of the committee, and prosecuting the necessary proceedings for that purpose, is an additional authority conferred upon the county judge in cases where the committee was appointed by the Supreme Court, where the county judge upon an examination of the committee's annual report, or upon his failure to make it, or comply with the order of the county judge to make it more full or satisfactory, has reason to believe that sufficient cause exists for his removal. It does not necessarily prescribe the practice when the Supreme Court, for reasons satisfactory to itself, directs an examination of the accounts and conduct of the committee. We thus reach the accounts as reported by the referee and confirmed by the court.

The committee was appointed in June, 1876, and this proceeding was instituted in November, 1897, more than twenty-one years afterwards. The committee never had filed any account. We have examined his accounts now filed and the evidence adduced upon the hearing, and, to say the least, the committee's administration of his trust seemed to proceed upon the theory that her estate was his, subject to the charge upon him of her support. It appears that immediately upon his appointment there came to his hands $7,200. After a careful examination we are satisfied that the learned referee in stating the account fell into an error in charging the committee both with the $7,200 and with the Nichols and Godfrey mortgages, so called, amounting to $2,900. The latter were investments out of the former and not assets in addition thereto. The referee should have treated these mortgages as part of the $7,200 of principal, or should have treated the $7,200 as principal, and regarding it as invested, or so much of it as the evidence shows ought to have been kept invested, he should have ascertained the income it ought to have produced. The latter method seems to us the only one which the unsatisfactory state of the accounts permits us to adopt.

Of the $7,200 $5,100 were in United States bonds bearing interest at five per centum; $1,000 in a note of the committee himself, payable to the lunatic with interest, and there were $1,100 of cash assets.   The invested funds produced at least $315 annually, and if we leave $400 in the hands of the committee for expenses, the balance, $700, should have produced $35 — total, $350.   Section 2321 provides that the court, acting through the committee, "must preserve his (the lunatic's) property from waste or destruction, and out of the proceeds thereof must provide for   *   *   *   (his) safe keeping and maintenance."   If the proceeds are insufficient the committee should apply to the court for leave to employ part of the principal. If this income could have been realized each year for twenty-one years it would have amounted to $7,350.   The committee reports only $3,517.03 of income, or $3,832.97 less than we have assumed. If we surcharge the income with half of this difference ($1,966.48) we feel that we deal as liberally with the committee as justice to the lunatic will permit.   He should, therefore, account for $7,200 of principal and $5,483.51 of income.   This total of income is what a principal of $6,528 at four per centum per annum would have produced in twenty-one years.   We conclude to charge the committee with $12,683.51.   He claims credit for disbursements $8,080.98. The referee allowed him the amount, less $1,177.90, being credits in excess of $500 without vouchers, and not otherwise supported by competent testimony under the rule applicable to executors' and administrators' accounts.   (Code Civ. Proc. § 2729.)   The committee contends that section 2729 is not applicable.   What is now section 2729 was, until 1893, section 2734, and was, by section 2850, made applicable to an accounting by a guardian.   Section 2341 made section 2850 applicable to the accounting by the committee of an incompetent person.   The phraseology is obscure, but we think such was the intention.   In 1893 the Legislature amended the Surrogate's Law, and changed the number of the sections so that what was formerly section 2734 is now section 2729.   But the Legislature manifestly forgot to make the corresponding change in section 2850 of section 2734 to section 2729.   There could have been no intent to change the law, and we think there was an intent to preserve it, and we feel justified in holding that it is unchanged.   (*People ex rel. Comstock* v. *Lucas*, 25 Hun, 610 ; *People ex rel. Furman* v.

*Clute*, 50 N. Y. 456; *People ex rel. Kingsland* v. *Palmer*, 52 id. 83; *People ex rel. Fitch* v. *Lord*, 9 App. Div. 458.)

Apart from this rule, we think that many of the items ought to be rejected upon the merits. A considerable item is for carriage hire incurred in enabling plaintiff's mother to visit the incompetent. These visits were commendable, but the mother had means of her own, and, under the circumstances, the propriety of charging the lunatic with the expense of these visits, in the absence of any order from the court, is doubtful. The same may be said of boxes of good things sent to the lunatic and charged by the box. There are other objectionable items. This disallowance leaves the committee credited with $6,903.08. Deducting this from $12,683.51 leaves him a debtor to the estate in $5,780.43, as of January 14, 1898. We cannot say that this is exactly right, but it is an approximation which we believe is about right.

The Special Term was justified in removing the committee and denying him commissions.

The order appealed from is modified by charging the committee with $5,780.43 instead of $7,266.87, and as so modified affirmed, without costs of this appeal.

All concurred.

Order modified by charging the committee with $5,780.43 instead of $7,266.87, and as so modified affirmed, without costs of this appeal.

---

In the Matter of the Application of the BOARD OF HEALTH OF THE VILLAGE OF LANSINGBURGH, Respondent, to Compel the Delivery of Books and Papers Belonging or Appertaining to the Office of the Board of Health of the Village of Lansingburgh, now in the Possession of MORRIS E. KIRKPATRICK and NATHAN T. SHAW, Appellants.

*Village — the official oath of a member of the board of health should be filed in the village clerk's office.*

The office of a member of a village board of health, selected by the board of trustees of the village, is a municipal office, and under section 10 of the Public Officers Law (Laws of 1892, chap. 681) and sections 43 and 62 of the Village Law (Laws of 1897, chap. 414) his oath of office should be filed in the village clerk's office, although the village may have been incorporated under a special act.