(74 App. Div. 468.)

In re NUTTING.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. APPEAL—QUESTIONS CONSIDERED.
    Where the first account of the committee of a lunatic is confirmed
    by the court with the acquiescence of all the interested parties, and is
    not attacked on the contest of a second account, it will not be con-
    sidered on an appeal from the settlement of the latter account.

2. CARE OF LUNATICS—DUTY OF COMMITTEE.
    The first duty of the committee of a lunatic is to provide for the
    comfort and care of the lunatic so far as is compatible with his estate,
    but, if he receives such care, it is immaterial that he is kept in a
    hospital where no charge is made for his care, or where his services are
    sufficient to pay therefor.

3. SAME—ACCOUNTING BY COMMITTEE—BURDEN OF PROOF.
    The committee of a lunatic who keeps the lunatic in a hospital which
    only receives his services as compensation has the burden, on account-
    ing, to show that the lunatic receives the care to which the condition
    of his estate entitles him.

4. SAME—EXPENDITURES—PRODUCTION OF VOUCHERS.
    Code Civ. Proc. § 2729, authorizing the allowance, without vouchers,
    of expenditures by administrators of items not exceeding $20, the total
    not to exceed $500, applies to the committee of a lunatic.

5. SAME—CLAIMS ALLOWABLE.
    The committee of a lunatic is not entitled, on accounting, to the
    allowance of sums paid to herself, the purpose thereof not being shown,
    or for money used to pay a bill for the estate of a third person, or
    for money expended for charity.

6. SAME—CORRECTION OF ACCOUNT—AUTHORITY OF APPELLATE DIVISION.
    The appellate division of the supreme court has no authority, on an
    appeal from an order confirming the account of the committee of a luna-
    tic, to correct the account.

Appeal from special term, New York county.

Petition for the settlement of the second intermediate accounting of
Nina M. Nutting as committee of Thomas B. Nutting, Jr., an insane
person. From an order settling the account, George H. Hart, as spe-
cial guardian of the incompetent, appeals. Reversed.

On February 19, 1895, the respondent, Nina M. Nutting, was appointed by
the supreme court a committee of the property and estate of Thomas B.
Nutting, Jr., her husband, an incompetent person. The petitioner and her
husband were residents of New Jersey, and the incompetent was engaged in
business in the city of New York as an insurance broker. The petitioner
had previously been appointed guardian of the person of her husband in
the state of New Jersey. The only property possessed by the incompetent
in the state of New York or elsewhere, except the amount in the hands
of his committee, is certain articles of office furniture used by him in con-
ducting the insurance brokerage business in the city of New York, and
valued at $250. His only source of income is his share in the profits of
the insurance business. The order appointing the respondent as committee
provided that she be authorized to continue the said insurance business,
and apply the profits and income of said business, so far as the same shall
be necessary, to the payment of the debts of the said Thomas B. Nutting,
Jr., if any, and for his maintenance and that of the said Nina M. Nutting,
and for the maintenance and education of their three minor children. The
insurance business is now conducted by one Eckert under an agreement,
made between him and said committee, whereby she is to receive one-half
of the gross receipts of the commissions, and profits thereof, in behalf of the
incompetent. In December, 1900, the petitioner filed her second intermediate

judicial account, and on the 10th day of January, 1901, applied to the supreme court, New York county, for the settlement thereof, and on that day an order was duly entered sending said accounts to a referee to examine, hear, and determine the questions arising upon the settlement thereof, and George H. Hart, the appellant herein, was appointed special guardian of the said incompetent. The income derived from the incompetent's business between February 1, 1898, and October 9, 1900, and paid over to the said committee, amounted to $9,089.65, including the sum of $236.13 received for rent. The committee secured the commitment of the incompetent to the state hospital at Morris Plains, in the state of New Jersey, as a charity patient; the hospital being maintained by the state as a charitable institution for the insane. Nothing is paid by the committee for his care and maintenance, and he performs certain duties in looking after other patients. The committee, in her account, alleges that she has expended $8,260.41, which was, for the maintenance of herself and children for the period between January 31, 1898, and October 9, 1900. This should leave in her hands, as a balance, $829.24, but this balance is merely nominal, for out of it she has procured an order authorizing her to retain for herself $252.24 for commissions, and to pay her attorneys $150, to the special guardian $100, and to the referee $125, amounting to the sum of $627.24, leaving the actual balance $202. She shows that she has consumed this money for the benefit of herself and children, but in accounting therefor she has failed to furnish vouchers for the amount of $2,183.24, expended in many items. The referee reported that the said amount as filed was just and true, and in conformity with the law, and should be allowed, and, upon the report of the referee coming before the court for confirmation, it was ordered that the said report be confirmed. From such order, this appeal is taken.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

George H. Hart, for appellant.
Albridge C. Smith, for respondent.

HATCH, J. So far as the first accounting is concerned, while the items of that account appear in the record, yet no attack is made thereon, and all the parties in interest acquiesced therein, and, the court having confirmed the same, we must regard it as finally settled, and not the subject of review upon this appeal.

This conclusion leaves alone for our consideration the exceptions which were taken to the report of the referee in the allowances which have been made to the committee in her acount. By the terms of the order appointing her such committee, the first provision, after a direction for payment of the incompetent's debts, is to pay, from the profits and income of the business conducted by the committee, such sum as shall be necessary for the maintenance of the lunatic. It is conceded that the lunatic has been placed in the asylum as a charity patient, and that the committee has paid nothing for his maintenance in any form; it is farther made to appear that he renders some service in caring for other inmates therein, but whether such service is an offset to his being supported free of charge is not made clearly to appear. The committee would be guilty of no impropriety or of neglect in the discharge of her duties to the incompetent by procuring him to be cared for in a state institution for the insane, without charge, if thereby he was properly cared for and maintained so far as consistent with the restraint necessarily imposed upon him. The incompetent, however, becomes entitled to have and receive such care and maintenance as is

essential to his comfort, so far as his estate warrants. This is the first and primary duty imposed upon the committee after the payment of debts; and the neglect to minister to his care and comfort, so far as is compatible with the value of his estate, is a neglect of the committee to discharge a plain duty imposed by the order appointing her. In re Reed, 22 App. Div. 328, 47 N. Y. Supp. 971, affirmed on appeal, 160 N. Y. 702, 57 N. E. 1123; In re Colah, 3 Daly, 529; May v. May, 109 Mass. 252.

If he receives such care and maintenance without any charge upon his estate, the committee will have discharged her duty in this respect, but it devolves upon her to show that such is the fact; and it becomes the duty of the court to see, and also enforce, the performance of this duty, if the committee has failed to properly discharge the same. In the record before us, such fact is not made to appear, and it is not an unfair inference to draw that a charity patient does not receive the same care and comfort as one for whose care and maintenance payment is made. It may be that his attendance upon other patients, when his mental capacity permits of the discharge of such duties, is of benefit to the incompetent; and it may be that such duties would be performed by him if payment for his support and maintenance was made by the committee; but these facts should all be made to appear in order that the court may be enabled to see that the committee has discharged her duty in this respect. The present record is barren of proof showing such fact. It becomes the duty of this court, therefore, to direct that proof be taken upon that subject.

The expenditures from the estate of the lunatic for which vouchers were produced seem to be correct. It appears, however, that $2,183.24 has been expended for which no vouchers whatever were produced. So far as the items which go to make up this sum are small in amount, it would be entirely proper to make allowance therefor within the limitations permitted by law; the account containing such items being produced by the committee, and the expenditures verified by her statements under oath. By the provision of section 2729 of the Code of Civil Procedure, such items of expenditure may only be allowed without a voucher when the item does not exceed $20 and the whole amount of such items so allowed shall not exceed, in the aggregate, $500. This provision of the Code is applicable to accountings of committees of incompetent persons. In re Chapman, 43 App. Div. 231, 59 N. Y. Supp. 1025, reversed 162 N. Y. 456, 56 N. E. 994, but not upon this point; nor was the construction which the court below gave to the sections of the Code covering such accountings at all disturbed. While it may entail some inconvenience upon the committee to produce vouchers for small items of expenditures, yet the law requires vouchers to be produced within the limitations provided for in the Code. It is clear from an examination of the account that the referee was not justified in passing the accounts of the committee, in a sum over four times the amount authorized by the Code, without the production of vouchers. This account is also subject, in this respect, to an objection upon the merits. It appears from the account in the book kept by the committee that there were several items of expenditure, one as high as $56, and several

items above $20. These disbursements no warrant in law exists for allowing, unless a voucher be produced, or by showing its loss or destruction by competent proof. It is evident, therefore, that the referee was wrong in allowing, and the court in confirming, the accounts to this extent.

The item of $169.85 under date of July, 1899, was also improperly allowed, as the only proof with respect to this item was the statement of the committee that she paid it to herself, but for what purpose does not appear. The only voucher is a check. The payment July 1, 1898, to estate of Mary D. Moore, of $15, was improperly allowed, as the committee testified that this was a loan to pay a bill of her mother's estate. The account also shows that small sums have been devoted to charity, amounting in the aggregate from $12 to $15 or more. We find no justification for these items.

The order appointing the committee also provides for the maintenance and support of the committee and her children and the education of the latter. It is, therefore, evident that the committee's position, in view of the limited character of the estate, requires economy in the discharge of her duties. Her account should not be subject to captious objection, and considerable liberality should be observed in passing upon it. In view of the circumstances, we should not have regarded the last-named expenditures, to which we have called attention, as sufficient to interfere with the affirmance of the order confirming the report of the referee. A sensible and just adjustment of the small matters may be easily arrived at, but, as to the condition of the lunatic and his needs, the allowance of items in excess of $20 for which no voucher is produced, and the passing of accounts for less than that sum, in excess of $500 in the aggregate, are without warrant of law, and require correction at our hands. The guardian who brings this appeal was justified in calling the matter to the attention of this court, and the service which he has rendered to his ward is commendable. It might be possible on this appeal, perhaps, to correct this account, but we have no power to do so. In re Chapman, 162 N. Y. 456, 56 N. E. 994.

The order of confirmation should, therefore, be reversed, and the proceeding remitted to the court below for further action, with costs to the special guardian, payable out of the estate. All concur.