Matter of the Construction of the Last Will and Testament of ALICE HALL BRIGGS, Deceased.

(Surrogate's Court, Saratoga County, September, 1917.)

Wills — directions contained in — construction of — power of disposition — trusts — aggression — Real Property Law, § 153.

Where the clause of the will of testatrix, by which she gave the rest of her property to trustees for the purpose of investment, management and payment of the net income to her husband for life, directs that during his lifetime he use as much of the principal of the estate "as in his judgment is necessary and proper and that he in no way be held liable or accountable for such principal so used," and it appears from a reading of the whole will that the estates given to other legatees were all intended to be subordinate to the authority conferred

Surrogate's Court, Saratoga County, September, 1917. [Vol. 101.

upon her husband and that the provisions for other legatees and remaindermen were intended to provide for a possible or probable remainder rather than a certain one, it will be held that under section 153 of the Real Property Law which provides that: "Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute," the husband who has already taken a portion of the principal under a claim of right to all of it has an absolute power of disposition; and that while not liable for any property used within the wide limits of his authority he must be held accountable for any aggression beyond that.

PROCEEDING for construction of a will.

John L. Henning, for Edward D. Eddy, petitioner.

Edgar T. Brackett, for J. Lynde Briggs.

Slade, Harrington & Goldsmith, for Hudson River Humane Society and Young Men's Christian Association.

Corliss Sheldon, special guardian for Mary Louise Edwards.

Butler, Kilmer & Corbin, for Saratoga Hospital et al.

George S. Van Schaick for Louise E. Parsons.

Harold C. Beatty, for John Franklin Durston et al.

H. P. Pendrick, for First Baptist Church.

John A. Slade, special guardian for Frederick Hurlbut.

OSTRANDER, S. Petitioner prays judicial construction of the will and codicil of Alice Hall Briggs,

Misc.] Surrogate's Court, Saratoga County, September, 1917.

deceased.  The will is dated December 18, 1911, and the codicil June 7, 1915.  Testatrix died November 25, 1916.

The will directs payment of debts, provides for care of her cemetery lot, leaves to her mother, if she survive testatrix, the life use of her homestead with its furnishings, and gives the fee to her husband at her death, or in case her mother does not survive her.

By the 4th clause she gave the rest of her property to trustees to keep invested and pay the net income to her mother quarterly during her life, and upon the mother's death to pay the net income thereof to her husband quarterly during his life.  Said 4th clause further provided: " I further direct that he (her husband) use during his lifetime as much of the principal of my said estate as in his judgment is necessary and proper and that he in no way be held liable or accountable for such principal so used."

By the 5th clause she directed that on the death of her mother and husband, if either survived her, or on her own death if neither so survived, the remaining principal be disposed of as follows: $5,000 each to various cousins, and, in the event of their prior decease, to their issue *per stirpes;* $18,500 to various religious and charitable uses, and the remainder to be divided into six equal parts which were to be paid over to certain of her collateral relatives.

The 6th clause related to realty which by a codicil she gave to her husband, and this clause became inoperative.

The 7th clause empowered her executors and trustees to hold and change investments as directed.

The 8th clause appointed her husband, John Lynde Briggs, and Edward D. Eddy executors and trustees, and provided that each should be liable for his own acts, but not for the acts of his co-executor, and

Surrogate's Court, Saratoga County, September, 1917.  [Vol. 101.

directed that neither executor nor trustee should be liable, except for gross negligence.

Her mother having died prior to June 7, 1915, a codicil executed on that day gave all her realty to her husband, and in other respects ratified the will.

The realty devised to the husband was worth about $25,000, the personalty a little over $143,000, the income from her personalty about $6,000. Decedent's debts were about $1,300. The whole estate was subject to payment of several thousand dollars for state and federal tax and expenses of administration.

Acting under the provision of the 4th clause: "I further direct that he use during his lifetime as much of the principal of my said estate as in his judgment is necessary and proper and that he in no way be held liable or accountable for such principal so used," John Lynde Briggs, the husband, has withdrawn $6,000 from the principal of the personal estate, claims a right to withdraw it all and claims to own the fee of the whole estate which he threatens to withdraw and expend for his own personal use.

Mr. Eddy, his co-executor and trustee, seeks a construction of the will and asks the court to determine, *first,* whether the husband is entitled absolutely to the whole estate not disposed of by the 1st, 2d and 3d clauses of the will; *second,* if he be not so entitled, whether the use of principal by him is limited to the amount necessary and suitable for his support and maintenance or limited in any other way; and, *third,* if so limited, whether he must first exhaust his own property before drawing upon the principal for such use.

The pleadings raise issues upon these questions and also upon the jurisdiction of the court to entertain the petition at this time.

It is urged that if the court has any jurisdiction in

the matter it is limited by the ordinary and usual rules of equity, as applied in the courts of equity, and that the question now presented is academic and not to be entertained.

It appearing that the husband has already taken $6,000 of the principal, claims the right to all of it, and threatens to exhaust it for his personal use, a substantial question is presented and the petitioner is entitled, under section 2510 of the Code, to a construction of the will to guide his action in the premises.

A question which involves the management of the whole estate and the rights conferred by the will is not academic.

Briefly stated, Mr. Briggs' claim to the fee of the whole principal is founded upon the doctrine that the gift over to the cousins, charities and residuary legatees is determinable at his will, is repugnant to the gift to him, is therefore void in its inception and that the whole fee is vested in him. In support of this claim he relies upon section 153 of the Real Property Law, which provides that: " Every power of disposition by means of which the grantee is enabled, in his lifetime, to dispose of the entire fee for his own benefit, is deemed absolute."

This contention to some extent confuses or overlooks the distinction between an absolute *estate* and an absolute *power of disposition*.

Under the common law, as stated in *Van Horn* v. *Campbell,* 100 N. Y. 287, an executory devise, determinable at the will of the first taker, was invalid because the gift is repugnant to the prior estate. Under that rule the expectant estate or gift over was invalid at its inception.

That rule has been changed by statute, and section 57 of the Real Property Law provides that while an expectant estate may be defeated by any act or means

which the creator in the creation thereof has authorized, yet such expectant estate so liable to defeat shall not be void in its creation.

Contrary to the rule of the common law, the expectant estate is now valid until defeated by the means provided.

Under section 50 of the Real Property Law, a remainder may be limited on a fee, upon the contingency of non-exercise of a power of disposition.

Under the language of the 4th clause of the will, there was no direct gift, in terms, of the property mentioned therein to Mr. Briggs, either for life, for years, or in fee. The gift of the *title* was to the trustees, subject, however, to the power of Mr. Briggs during his lifetime to use so much of the principal as in his judgment should be necessary and proper.

Sections 149, 150 and 151 of the Real Property Law prescribe conditions under which a lesser estate, or an absolute power of disposition, is deemed to be changed into a fee or is tantamount to a fee. None of these sections apply in the case at bar.

An absolute power of disposition may give its holder dominion over property, which, if exercised, will be equivalent to a fee.

This brings us to the question whether Briggs is given an *absolute* power of disposition. In the absence of any statutory provision, an absolute power of disposition would be one by which the holder of the power might dispose of the property as fully and in the same manner as he might dispose of his own individual estate acquired by his own efforts. This would include the power to dispose of it by will, the power to dispose of it foolishly for his own whim or caprice, to squander it, to give it away, or make any disposition that he chose, not infringing upon the rights of his creditors.

Misc.]   Surrogate's Court, Saratoga County, September, 1917.

It was held in *Matter of Cager,* 111 N. Y. 343, that a person not having a power to dispose of property by will did not have an absolute power of disposal. A person accountable for his act in any way to any other person does not have a complete and absolute power of disposition in the common understanding of the term. The statute has long provided a definition of an absolute power of disposition. Thus the Revised Statutes provided that " Every power of disposition shall be deemed absolute by means of which the grantee is enabled in his lifetime to dispose of the entire fee for his own benefit."

Section 153 of the Real Property Law has re-enacted this provision of the Revised Statutes with a slight change in the arrangement of the words.

· Briggs claims that the provisions of the 4th clause bring this case exactly within the provisions of section 153 and that therefore he has an absolute estate in all the property to which section 4 relates, and that the gift over to the remaindermen is void in its inception.

To this I cannot agree. There is a wide distinction between a title in fee and a power of disposition of property. In the latter case the fee is not in the donee of the power, but such donee has a dominion over the fee which he may exercise or not at his option. If he fails to exercise this dominion, then the title to the fee is not changed and never rests in him.

The case of Briggs is of the latter kind. He is given certain rights to dispose of the personal property during his lifetime, and if he exercises that authority in the manner and to the extent in which it is conferred upon him and for the purposes authorized, he may, in his lifetime, dispose of the entire estate and thereby defeat the expectant estates.

Surrogate's Court, Saratoga County, September, 1917.   [Vol. 101.

Is the power of disposition in Briggs for his own benefit absolute or limited?

" Whether a power of sale is *absolute* within these statutory provisions is not to be determined by an inquiry as to whether if it be exercised good title passes, but by considering who take or are interested in the proceeds of the sale." *Stafford* v. *Washburn,* 208 N. Y. 536, affg. 145 App. Div. 784.

Under section 153 the tests of an absolute power of disposition are three: Is the grantee (a) enabled to dispose of the entire fee (b) in his lifetime (c) for his own benefit? If so, he has absolute power of disposition.

It is insisted that Briggs, as an individual, has no power of disposition, but that the estate was given to himself and his co-trustee, as trustees, and that the power of disposition which is given to him is given to him as trustee and not as an individual. To this view I cannot assent. The estate was given to the trustees for the purpose of investment, management and payment of the income to Briggs until it be used by him, but this gift to the trustees is subject to the authority given to Briggs to dispose of the principal in accordance with the direction given. The gift to the trustees is upon the condition that Briggs may use the principal, and when he does so and disposes of it then management by the trustees ceases.

There is no apparent intention to vest in him the right to use principal as trustee for the benefit of himself, but the intention is that what he uses shall thereupon cease to be any part of the trust fund, and that in using it he uses it as an individual and not as a trustee.

It is further urged that the use which Briggs may make of this principal is merely in the nature of a

life use, without power of consumption in the use, or power of alienation of the principal.

To this I cannot assent. The word " use " was intended to mean something more than to receive and dispose of the income. The testatrix had already directed payment of the income of all this estate to Briggs, and by this clause she confers authority over the principal, directing that he may use certain of the principal. It the word " use " was not intended to mean " consume " the language would be idle, since he already had the income. The language of the power conferred upon Briggs is: " I further direct that he (a) use (b) during his life (c) as much of the principal of my estate as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used."

It will be seen by this language that at least two of the tests of absolute power of disposition, under section 153, are conferred upon him. He is enabled, in his lifetime and for his own benefit, to dispose of something.

Is he enabled to dispose of the entire fee?

He is directed to dispose of (so much of the principal as *in his judgment* is necessary and proper.) It is urged that this language was intended to limit his use to provision for necessities for his support and maintenance during life, and that his use of it must be necessary and proper having reference to the interests of the expectant estates.

The rule of construction is well settled that the testator's intent must be discovered from all the language of the will, and be given force, so far as it is not positively against the provisions of the statute, or well-settled policy of the law.

What did she mean by the language used?

It is argued that because the testatrix knew that

Surrogate's Court, Saratoga County, September, 1917.   [Vol. 101.

her husband, beyond middle life, childless and not in active business, would have about $25,000 in his absolute ownership, and the income from perhaps $125,000 more, that therefore she thought he would have enough with that, and did not intend that he should use any principal except for his support and maintenance.

One answer is that if she thought so she might easily have said so. But she did not say so, and if she entertained such thought she never in terms expressed it in the will.

It is not for a court to constitute itself almoner and attempt to declare what the decedent should have thought, but it must subordinate itself to the testatrix's intent. She refrained from defining and limiting precisely the purposes for which her husband might consume the principal, and the court may not usurp her province by inserting language which it thinks she should have used. The only boundary which she set to his consumption of the principal was that it must be, in his judgment, necessary and proper. She did not say that his use must be actually necessary and proper in the *opinion* of the court. If she had done so more uncertainty might have resulted than follows the expression which she used, and her husband might have suffered while the courts debated the question of necessity and propriety. If she wanted this, she would have said so. Whether or not she succeeded in avoiding this trouble may be open to question, but she intended to do so. Mr. Briggs may conclude that fine cars, more servants, more luxuries, are necessary and proper for him with his advancing age. A court might not hold this view. She intended to leave decision of such matter to him. Many other uses to which he might desire to put the principal and about the necessity of which courts would differ

may well be within his power. She did not say for what the use must be necessary and proper except that the use should commend itself to *his* judgment of necessity and propriety — not to the judgment of some one else, whether exercised individually, privately or collectively, and upon the woolsack. She may have thought that though the king and the court can do no wrong, yet nevertheless they sometimes do what it is said they cannot do. At any rate, the standard of necessity and propriety which she decided to fix was the judgment of her " beloved husband," whom she knew, rather than that of some other person, agency or tribunal which she did not know.

This necessity and propriety had reference to the expenditure of her principal as between himself and her heirs and legatees. She probably did not expect him to forget that some of them were of her own blood, though remote, nor the degree of interest in her which they had previously manifested in her lifetime, nor that he himself was the closest of all persons in the world to her. She expected him to consider his own comfort and desires quite as much as those of the remaindermen. She knew from years of companionship with him the workings of his mind, and may have left to his execution, under this power, personal wishes which she did not care to disclose and so confided to his judgment the settlement of necessities and proprieties of the expenditure of this money. She intended it to be his personal judgment, and not the judgment of some other person or tribunal and she so expressed her thought. She gave him a wide latitude, but she had a right to make this latitude as wide as she chose. Within their province, and subject to the husband's power of disposition, she also gave broad power to the trustees.

It is suggested that if she desired to give all to

him, absolutely, she could have said so. It is equally true that she had an equal right to leave the use of the principal to his own sense of propriety and necessity.

Having clothed him with such power, she then provided that for any principal so spent, that is, in a manner which his honest judgment should call necessary and proper, he should in no way be held accountable or liable. She did not say that he must insure the wisdom of his judgment, but that he must use *his* judgment, be the same more or less, and she did not leave that to be reviewed by any person so long as he exercised an honest judgment in the matter. She did not intend that he should fraudulently omit to use any judgment, nor act in bad faith.

The court may review the question of good faith as a matter of fact. *Matter of Wilkin*, 183 N. Y. 104. Nor did she intend that he should be liable for an honest error in judgment.

The husband may not determine that he will throw the principal away, nor that he will defeat the whole scheme of this will by refusing to entertain any judgment about it, and dispose of it by throwing it into the fire or some equally reckless manner.

It is undoubtedly the right of the expectant estates to inquire whether Briggs used his best judgment in good faith, or whether he failed to do so. If he did so use his judgment, then he was within the terms of the authority given him to dispose of the principal, but, if he failed to do so then he has not acted within the authority conferred by the will.

· The power and duty of the court to determine as a question of fact whether he, in good faith, exercised his judgment, and whether, in his honest judgment, the use which he made of the property was necessary and proper, limits the power of Briggs to dispose of the

Misc.]  Surrogate's Court, Saratoga County, September, 1917.

entire estate absolutely without any possible review of his action.

In that sense, his authority is not full and complete and absolute as it would be over his own property. But any disposition of principal by him, which fairly commends itself to his judgment, is within the scope of his authority, and keeping within those lines he may dispose of it all in his lifetime for his own benefit.

He has an absolute power of disposition within the provisions of section 153 of the Real Property Law, as far as he shall exercise it, if the disposition made by him of the estate shall be according to his honest judgment necessary and proper. But the principal must be *used* by him, and may not be hoarded by him nor dispersed in bad faith. But because he may, under certain circumstances, dispose of the whole fee in his lifetime, for his own benefit, it does not follow that under all circumstances he has the same power to dispose of it that he would have if it were his own property. His power to use within his judgment in his lifetime is complete, but he has no power to devise, nor in bad faith to divert it to the use of others, his nominees.

It is urged that Briggs may not dispose of any principal, because he cannot under the authority of the law deliver possession of principal.

It is argued that the title of the property is in himself and his co-trustees *jointly* and that it may be alienated by them jointly and not severally, and that he being both a trustee and a beneficiary his co-trustee would be a necessary party to the conveyance.

The answer to this proposition is that the whole gift of title to the trustees is subject to the power of disposition given to Briggs as husband, individually, and as within the limits of the authority given to him the trust estate may be swept away by his acts out of

the hands of both trustees as such, their possession must yield to his right to use. As to this gift of power, he is a *legatee* and not a trustee.

It is argued that because the testatrix made elaborate provisions for residuary legatees and because she designated certain sums to go to certain legatees in the events named, therefore she intended that this principal should not be alienated by her husband, but kept for the use of these residuary legatees. But the will contemplated the disposition of her estate in case her husband, or her mother, should not survive her, and these provisions made for the other legatees would have been appropriate to such a condition of affairs.

It was also possible that the husband might not find it in his judgment necessary or proper to dispose of all or perhaps of *any* of the principal, and in that event the trustees were given power, which remains until all principal is used.

It is urged that if the husband can use the whole principal, he can destroy the trust and disrupt the whole scheme of the will. This view arises from a misconception of the scheme of the will. If we read all the parts, in the light of her intention to subordinate the trust estate to the power of the husband to use principal for his benefit in the exercise of his honest judgment as to the necessity and propriety of such use, then effect is given to all parts of the will.

I cannot resist the conclusion from the whole reading of the will that the estates which were given to the other legatees were all intended to be subordinate to the authority bestowed by her upon her husband, and that the provisions for other legatees and remaindermen were intended to provide for a possible or probable remainder rather than a certain one.

It is conceded that none of the authorities cited by

counsel are precisely parallel to this case and it is unnecessary to point out the distinctions between them and this.

The court will not undertake, in advance, to define precisely all uses to which the husband in the exercise of his judgment may devote the principal, but will leave those matters to be determined as they arise.

My attention has not been called to any authority holding that, under circumstances parallel to this case, the donee of such a power must exhaust his own estate before exercising such power for his own benefit.

The claim that the action of Mr. Briggs may not in any event be reviewed because testatrix took away all remedy by providing that in no event should he be liable for principal so used, and that therefore his title to any principal which he might seize is unassailable, is not well founded. He is not liable for any property used within the wide limits of his authority, but is liable for any aggression beyond that, and to that extent must be held accountable.

No suggestion of bad faith has been made so far as Mr. Briggs has already used the principal.

Decreed accordingly.