Misc. 17]    Surrogate's Court, Schoharie County, December, 1923.

that defendants should have resorted to a court and " not have taken the law into their own hands " (as plaintiff's counsel puts it), it does not follow that plaintiff, if he himself substantially breached the agreement, can recover damages or profits to which he would otherwise be entitled. As in the case of any claim to damages for breach of contract, he must show his own substantial performance of essential conditions. *Reiter* v. *Morton*, 96 Penn. St. 229, 239; *Westwood* v. *Cole*, 66 Misc. Rep. 53, revd. on other grounds, 139 App. Div. 841; *Devine* v. *Melton*, 170 id. 280, 285; *Durbin* v. *Barber*, 14 Ohio, 311; *Dumont* v. *Ruepprecht*, 38 Ala. 175, 184. Beyond that he seeks equitable relief. His own misconduct is an appropriate subject of inquiry to enable the court of equity itself to define the extent of this relief. As stated by Justice Gray in *Karrick* v. *Hannaman*, 168 U. S. 328, 335: " A partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement." He may then have what was his, but not what was to become his on condition of performance by him.

This banking and brokerage firm could not function without confidence of its customers. It is not as a matter of law immaterial that these partners found that plaintiff was a thief and that he breached the agreement by taking secret profits, speculating in the firm name for personal gain and procuring money from his partners by fraudulent misrepresentations. This defense raises issues of fact essential to the determination by the court of the question whether the accounting should be only for what was actually due him or also for damages or future profits. Defendants, moreover, are entitled to have the court pass upon their own prayer for an accounting.

Motion denied.

Ordered accordingly.

In the Matter of the Final Judicial Settlement of the Accounts of CHARLES O. NILES and BLANCHE NILES JONES, as Executors of the Last Will and Testament of MARTHA NILES, Deceased.

Surrogate's Court, Schoharie County, December, 1923.

Wills — construction — executors directed to sell real estate for dis- tribution — life tenant entitled to possession of estate without bond — limitation of right of life tenant to use principal for his support and maintenance — life tenant to file annual account in Surrogate's Court.

The will of testatrix after a devise and bequest to each of three of her children of an undivided one-fourth part of her residuary estate disposed of the remaining fourth by the following clause: " *Fourth.* I give, devise and bequeath to my

son, Lynn Niles, the use, income and control of an equal undivided one-fourth of my property real and personal for his use and benefit during the full end and term of his natural life, and if necessary for his support & maintenance to use of the principal herein given and devised to him he may do so, and at his death I give, devise and bequeath what remains of said one-fourth of my estate herein given to my son Lynn Niles during his life for his use and support, to my grand children living at my decease, equally share and share alike, to them and their respective heirs and assigns forever." Upon the judicial settlement of the accounts of the executors and for a construction of the will, *held*, that the executors were entitled to a decree directing the sale of the real estate and distribution of the proceeds.

In the absence of proof that the life tenant was incompetent, improvident or insolvent, or in any way an unfit man to assume the custody of the said one-fourth of the estate of which he had the " control," he was entitled to the possession of one-fourth of the personal property and one-fourth of the proceeds of the executors' sale of the real estate, without giving a bond, the will having been executed prior to September 1, 1914.

The life tenant, however, has no right to invade the principal until his circumstances are such that he is compelled to resort to the fund for his support and maintenance, and when the contingency created by the words " if necessary " happens, the amount of the trust fund which he may use from year to year will depend upon his circumstances, his wants and his needs.

Some of the remaindermen being infants the decree to be entered will provide *inter alia* that the life tenant shall file annually with the Surrogate's Court a report of the custody, investment and disposition of the fund so paid over to him pursuant to said decree, in substantially the same form as by law required of general guardians of infants.

PROCEEDING for judicial settlement of executors' accounts and for construction of a will.

*William H. Golding*, for executors.

*Watson Lamont*, for William Lynn Niles.

*Francis L. Smith*, special guardian, for infant remaindermen.

BEEKMAN, S.   This is a proceeding for the judicial settlement of the accounts of the executors and for construction of portions of the will, and for the sale of real estate for the payment and distribution of the respective shares of the parties therein, entitled thereto, some of the parties being infants.

The decedent by her will, which was executed on the 18th day of October, 1913, first gives to certain children specific articles of household furniture.

By the 2d clause of her will she gives each of three children, including William Lynn Niles, $225 each, and then proceeds to state that after the payment of the above bequests, she gives and devises to her children, Charles O. Niles, Blanche N. Jones and Arthur Niles, each an undivided one-fourth part of her estate, real and personal, as provided in the 3d clause of her will.

The remaining one-fourth of the residuary estate is disposed

of by the 4th clause of her will, the construction of which is asked for, and which reads as follows:

"*Fourth.* I give, devise and bequeath to my son, Lynn Niles, the use, income and control of an equal undivided one-fourth of my property real and personal for his use and benefit during the full end and term of his natural life, and if necessary for his support & maintenance to use of the principal herein given and devised to him he may do so, and at his death I give, devise and bequeath what remains of said one-fourth of my estate herein given to my son Lynn Niles during his life for his use and support, to my grand children living at my decease, equally share and share alike, to them and their respective heirs and assigns forever."

It is my opinion that the executors are in this case entitled to sale of the real estate for distribution. Therefore, in consideration of the questions as to the custody of the property and the rights and interests of the parties in and to the personal and real estate, the personal property and the proceeds of the real estate will be treated as one fund, as the real estate will be turned into money and be distributed with the personal property.

The testatrix died June 3, 1921, and her will was admitted to probate on June 15, 1921, and letters testamentary issued thereon.

One of the questions which has been raised is whether under the 4th clause of the will, Lynn Niles is entitled to the possession of one-fourth of the property, that is, of the personal property and proceeds of the real estate, and whether the executors should, under the terms of the will, pay the same over to him, and if so, whether upon or without the said Lynn Niles giving a bond.

It will be observed that the testatrix gives to her son, Lynn Niles, the use, income and control of an equal undivided one-fourth, etc. The word "control" is indicative of the intention of the testatrix that Lynn Niles should have the possession, for in a certain contingency he is given the right " to use of the principal." The control of the property would necessarily imply the investment and management of it, and to do so it would be necessary for him to have the possession of it.

Consideration will next be given to the question whether a bond should be required of the life tenant. In *Smith* v. *Van Ostrand*, 64 N. Y. 278, where it was held that the widow not only had the right to the income but was empowered to apply the principal so far as necessary to her support, the court uses this language (p. 281): "When a life estate is bequeathed in a sum of money, with remainder over, the legatee is entitled only to the income, and the principal, subject to the life estate, belongs to the remainderman, and, unless otherwise directed by the will, it is the duty of the

executor either to invest the money and pay the interest to the first legatee during life, and preserve the principal for the remainderman, or, on paying it over to the legatee, to require security from him for the protection of the remainderman in respect to the principal (*Tyson* v. *Blake*, 22 N. Y. 558). But it is within the power of the testator to dispense with these safeguards and to confide the money to the legatee for life, trusting to said legatee to preserve the fund for the benefit of the remainderman, in which case the legatee for life becomes trustee of the principal during the continuance of the life estate."

In *Matter of Ungrich*, 48 App. Div. 594; affd., 166 N. Y. 618, where the will gave to the wife " all the rents, income and interest of all the remainder of my real and personal estate during her life with the *custody and possession* of all personal property of which I may die possessed," and where no power was given her to use any of the principal, the court cited the language above quoted in *Smith* v. *Van Ostrand, supra*, and further said (p. 596): " To the like effect is the opinion in *Matter of McDougall*, 141 N. Y. 21, 26, where Judge Peckham said: ' In other cases where it has been held that the legatee was entitled unconditionally to the possession of the legacy without security, other facts existed, such as where the language of the will made it manifest that the testator intended to give to the legatee power to use in his discretion some portion of the corpus of his estate for his support, * * * or the whole scheme of the will or the terms of the particular legacy were such as to show that the testator intended to give a legacy of money for life only, and yet clearly intended the life legatee to have *possession* thereof and trusted to him not to waste, use or otherwise dispose of the corpus.' "

In the will in the case at bar it is provided that the life tenant, Lynn Niles, shall have the control, meaning possession. In the *Ungrich* case the court further said: " By the clear and unambiguous terms of the will the testator has made his wife the testamentary trustee of the principal of his personal estate, for life. In addition to the income and interest, he has given her the custody and possession of the personal property. She is, therefore, entitled to such custody and possession as such trustee and can no more be required to give security, as a matter of course, than the appellant executors could be required to give security as a condition precedent to the execution of the trust imposed in them. Before making an order for such security, said the court in *Matter of Camp*, 126 N. Y. 377, 385, ' there must be some fact alleged and proved tending to show the property would be unsafe and insecure in the hands of the tenant for life.' "

Misc. 17]    Surrogate's Court, Schoharie County, December, 1923.

There has been no proof or claim that Lynn Niles is incompetent, improvident or insolvent or in any way an unfit man to assume the custody of the one-fourth of the estate. It is reasonable to suppose that in case the testatrix had felt that it was unsafe to trust her son with the custody of the fund, she would not have used the word " control," or, in any event, she would have provided that he should give security. The will was executed on October 18, 1913, and she did not depart this life until June, 1921, and during all that time she apparently saw no reason for throwing any greater safeguards around the provision for her son, Lynn, than are expressed in the will. An exhaustive discussion of the question as to when a bond should be exacted from a life tenant is contained in *Matter of Rowland,* 153 App. Div. 327, in which the court uses the following language: " It is the general rule that under such circumstances the life tenant is not entitled to the possession of the corpus of the fund, consisting of moneys or securities, without giving adequate security for the protection of the remaindermen, unless the will expressly provides that the life tenant shall have possession or unless the scheme of the will, viewed in the light of surrounding circumstances, indicates plainly that the testator intended that the life tenant should have such possession, in which event the life tenant should be considered as a trustee for the benefit of the remaindermen and *subject to supervision by a court of equity during the continuance of the life estate. (Matter of McDougall,* 141 N. Y. 21; *Livingston* v. *Murray,* 68 id. 485; *Smith* v. *Van Ostrand,* 64 id. 278.) And where the will expressly directs that the life tenant shall have possession of the fund, the executors cannot as a matter of right insist upon security before paying it over *(Matter of Ungrich,* 48 App. Div. 594; affd., 166 N. Y. 618); and also where the will, without express provision as to the custody of the fund, provides that the life tenant may consume the whole or a portion thereof, then the executors may discharge themselves by paying over the fund to the life tenant, without security *(Leggett* v. *Stevens,* 185 N. Y. 70); and thus when the scheme of the will shows that it was contemplated, though not expressly provided, that the life tenant should have possession of the fund, then a payment over by the executors may be made without taking security. *(Matter of Hamlin,* 141 App. Div. 318.)"

Although the life tenant is not specifically named as a trustee in so many words, he nevertheless becomes trustee for the remainderman, and if it should be claimed that he should give a bond as being on the basis of a testamentary trustee, under section 169 of the Surrogate's Court Act, it must be remembered that that section does not require the giving of a bond by the trustee where

the will was executed prior to September 1, 1914. See *Matter of Michel's Estate*, 160 N. Y. Supp. 520.

We next come to the consideration of the question as to the extent of the right of Lynn Niles to invade the principal for his support and maintenance. Numerous authorities have been cited and each case rests upon the language of the particular will involved, and in many cases upon surrounding facts and circumstances. While many of the cases may give some light collaterally upon the question involved here, the chief effort must always be to ascertain, as far as possible, what the intention of the testator was. In some cases it is held that the life tenant had a right to invade the principal given by the will, without reference to how much property he may possess in his own right aside from the property in which he may acquire an interest under the will. It is clear that the son, William Lynn Niles, named in the will as " Lynn Niles," has the absolute right to the income and profits of an undivided one-fourth of the residuary estate during his lifetime, with the right to use such interest and income as he sees fit. It will be noticed in the 4th clause that the will gives him said right to the income for " his use and benefit " and that when the testatrix proceeds to give him the right to invade the principal, she says for " his support and maintenance." The right to invade the principal is limited to support and maintenance.

The next question that arises is: When and under what circumstances may he use the principal? The answer is, " *if necessary.*" She does not say, " I give to my son, Lynn Niles, the right to use of the principal for his support and maintenance," but she says, " I give, devise and bequeath to my son, Lynn, the use, income and control of an equal undivided one-fourth of my property, real and personal, for his use and benefit during the full end and term of his natural life, and *if necessary* for his support and maintenance, to use of the principal herein given and devised to him, he may do so." The sentence is somewhat eliptical but plainly means " and if necessary for him to resort to the principal for his support and maintenance, he may do so." The words " principal herein given and devised to him " do not mean that the principal is given and devised to him absolutely but only mean that if it is necessary for him to resort to the principal for his support and maintenance, that the principal is given and devised to him for that purpose and in that contingency, for the latter part of the clause plainly gives and devises what is left after the happening of the contingency of his being compelled to resort to the principal for his support, to the grandchildren of the testatrix who may be living at her death. If the contingency does not happen, the

Misc. 17]      Surrogate's Court, Schoharie County, December, 1923.

grandchildren take the corpus; that is, the corpus is given to them subject to the happening of the contingency. Now, what is the contingency? The contingency is that the condition, health and situation of Lynn Niles, his income, earnings and his property shall be in such a situation and state that he is compelled to resort to the principal of this fund for his support and maintenance. A discussion of what particular circumstances would entitle Lynn Niles to invade the principal or the extent to which he might invade it, would be purely academic at this time, for many circumstances which we cannot anticipate may so deplete his means and income as to make it necessary for him to resort to the principal for his support and maintenance, his property, business, the size of his family, his health, and his situation in life.

As hereinbefore stated, under the 4th clause of the will, Lynn Niles became a trustee for the remaindermen of the fund which is subject to be invaded within the intention and purposes of the will and subject to the supervision, etc., of a court of equity during the continuance of the life estate.

My conclusion is that Lynn Niles has no right to invade the principal until his circumstances are such that he is compelled to resort to the fund given in this will, and when the contingency happens, the amount of the trust fund which he may use from year to year depends upon his circumstances, his wants and needs. It is impossible at this time to determine what those circumstances may be in the various mutations of life. To hold that upon the payment to him of the fund, he is entitled immediately to use the principal of the fund for his support and maintenance, without reference to what his other means may be, might wipe out the fund in a very short period and leave nothing to pass to the grandchildren. From the facts stated in the petition, accounts and affidavits on file it would appear that the one-fourth of the residuary fund will amount to in the neighborhood of $2,000. To hold that the principal fund can be resorted to without reference to the other means of support which Lynn Niles may have, would be practically giving authority to exhaust the fund in about three years, providing it would cost $700 a year to pay for the support and maintenance of Lynn Niles and his family consisting of his wife and child or children. It cannot be presumed that the testatrix had any such result in view or that she intended to make such a thing possible. It is more reasonable to conclude that having in view the vicissitudes of life, the loss of health and earning capacity, the loss of property, the possibility of her son Lynn living to be an aged man, she desired Lynn to have, in any event, the interest and income on the fund during his life and that whenever he

should not have sufficient means to support and maintain himself according to his station in life, that *then* he might resort to the principal of this fund, and use such portion as might be required for his proper support and maintenance during life. In other words, to use the expression common among our plain folk, she intended to provide a fund for him against the " time o' need."

As above remarked, it would be purely an academic discussion at this time to attempt to define what the particular circumstances may be which would authorize Lynn Niles to encroach upon the principal. As pointed out in *Clark* v. *Clark*, 23 Misc. Rep. 272, a court of equitable jurisdiction never loses its power to review the use of discretion of trustees in the exercise and execution of their trusts. Therefore, it would be improper at this time to attempt to chart the course of this trustee for years in the future, further than to hold that he has no right to use the principal until the contingency arises above referred to, namely, the contingency that his individual property and other means of support are insufficient. To illustrate my meaning without saying that it should be a determining factor or stating it as a means of guidance to the decision of any court on further consideration of this case, I apprehend that to justify an order for a life tenant to begin to entrench upon the principal, it would not be necessary to prove that he was absolutely penniless. For instance, having a family and a suitable house of moderate price according to his situation in life, the court considering what his health or means of livelihood may be sometime in the future, might reach the opinion that he should not be compelled to sell his home or mortgage it, before it would be considered necessary for him to encroach upon the principal.

Some of the cases which have been cited on briefs, holding that all of a given fund may be used for the support and maintenance of a life tenant, without reference to his individual means, are cases where an action has been brought, either by or against a trustee, and where all of the circumstances and situation of the parties have been placed in evidence at a given time and where the court has decided what should be done at that particular time and under the peculiar circumstances, and also in several of the cases where it has been so held, the life tenant has been a lunatic or incompetent or unable to earn a livelihood, or where the will disclosed that it was the intention of the testator that the fund should be devoted specially to maintenance and support.

In *Matter of Holden* v. *Strong*, 116 N. Y. 471, the particular language of the will is not set forth in the report of the case; and I, therefore, obtained a copy from the printed case on appeal on

file and find that the clause of the will under consideration in *Holden* v. *Strong* reads as follows:

" *Third.* I give, bequeath and devise all the rest, residue and remainder of my estate, both real and personal, to my Executor hereinafter named, in trust *for the benefit* of my son, John H. Holden, during his natural life   For the purpose of said trust I direct that my said estates shall be converted into money and invested in good interest bearing securities with all convenient celerity after my death, and I hereby give my said Executor as such Trustee full power and authority to use so much of the said trust fund, either interest or principal, as shall in his judgment and discretion be necessary for the proper care, comfort and maintenance of my said son, John H. Holden, so long as he shall live; and after his death and the payment of his funeral expenses I direct the remainder, if any, of the said trust fund to be distributed to my heirs then living, according to the laws of inheritance *per stirpes.*"

It will be observed a trust was created expressly " for the benefit of my son, John H. Holden, during his natural life."   The fund clearly was to be used for the benefit of the son, both interest and principal.   The one thing that was to be done was to devote the money to the care, comfort and maintenance of the son, and the *amount* only was left to the discretion of the trustee.   In that case the evidence showed that the son was forty-seven years of age, unmarried, that he repaired clocks and sewing machines and sewed in families whenever he could get such employment; that he possessed many eccentricities and vagaries; that he had been insane and was at one time the inmate of an asylum, and possessed neither a vigorous or healthy body or a well-balanced mind.   In that case, we may well conclude, taking the language of the will and the circumstances into consideration, that the father did not intend that his son should be subjected to the stress on his mind or body to earn a livelihood but did intend that his trustee should amply provide for his support and comfort and allow him to work whenever he saw fit to do so and accumulate a little fund of his own, thinking occupation would no doubt tend to make him happier and prevent his lapsing again into insanity.

In *Rezzemini* v. *Brooks*, 118 Misc. Rep. 791; 236 N. Y. 184, the testatrix gave all of her property in trust to her executor to pay the income arising from her estate to her son during the term of his life and upon his death to pay the principal of the estate or so much thereof as might remain, to certain other persons.   By a subsequent clause in the will she provided " if the *income* from my estate shall be *insufficient* for the proper support of my said son,

then and in that event, I authorize and empower my said trustee to expend so much of the principal thereof as may be necessary for that purpose." In that case it appeared that the son was an absolute imbecile and paralytic, of about forty-four years of age, and had been adjudged mentally incompetent and a committee of his person and estate appointed. The significant words were, " if the *income from my estate shall be insufficient* for the proper support of my said son;" that was the condition which authorized the invasion of the principal. The opinion of the justice before whom the case was first tried said (p. 793): " It is the insufficiency of the income from her estate and not the insufficiency of the income received by the son from other sources which authorizes and directs the expenditure of the principal fund for the support of her son. The limiting or qualifying influence of the word ' necessary ' does not relate to the purpose but to the *amount* to be applied for the stated purpose, which is the proper support of the son." The Court of Appeals took the same view and said (p. 191): " She provided that the principal or so much thereof as may then remain should be paid to the remaindermen, clearly indicating that her son was to be supported and maintained, *first*, from the income so far as the same would suffice, and, *second*, from the principal in such *amount as might be necessary* in addition to income, to properly support and maintain him."

In *Matter of Estate of James Riley*, 4 Misc. Rep. 338, the testator gave his brother the sum of $1,000 in lieu of and in full for any claim that his brother might have or claim against the testator and gave to a trustee the sum of $1,000 " to use it for the comfortable support of my said brother and to pay his funeral expenses, and if any part shall remain after the decease of my said brother, said residue or remainder shall be divided equally between my son and daughters." Here the court placed stress upon the fact that the legacy was not a gratuity prompted by love and affection but a legacy in satisfaction of a debt, and hence if there was any ambiguity in the terms of the bequest, it should receive a liberal construction in favor of the brother. It will also be noted in the *Riley* case that the language of the will contained no reference to the fact whether payment towards the brother's maintenance might be necessary or not. The will contained a plain direction to use the $1,000 for the comfortable support of the brother. In this case the court further held (p. 342): " The will in this case does not make the trustee the judge of the amount required by the petitioner for his support, nor does it make the petitioner himself the judge of his own necessities."

In *Swarthout* v. *Ranier*, 143 N. Y. 499, which has been cited,

the widow was " to have and to hold the same  *  *  *  during her natural lifetime," but " for her comfort and support if she needs the same." This was language such as was capable of liberal application in the decision as to how the widow might use the principal. In that case where a question was raised as to whether she had acted in good faith in giving to her second husband a mortgage on the real estate for $3,000, the court did not hold that her discretion as to what use she made of the property was beyond review by the courts, in case those interested claimed and produced evidence showing that the discretion was exercised in bad faith and fraudulently as against the heirs at law, and also held that the trustee should file in the office of the surrogate an annual account of his proceedings as such trustee.

In *Matter of Briggs*, 101 Misc. Rep. 191; 180 App. Div. 753; 223 N. Y. 677, the will made the husband and another the executors and trustees of a large fund and said: " I direct that each of my said executors and trustees shall be held liable for his own acts but not for the acts of the co-executor, and I further direct that neither of my said executors or trustees be held liable or responsible except for gross negligence;" and further provided: " I further direct that he (her husband) use during his lifetime as much of the principal of my estate as *in his judgment* is necessary and proper and that he in no way be held liable or accountable for such principal so used."

The husband in this case had withdrawn $6,000 from the principal of the personal estate and claimed a right to withdraw all of it and to own the fee of the whole estate which he threatened to withdraw and expend for his own personal use. This gave rise to a construction before the surrogate, an appeal to the Appellate Division and thence to the Court of Appeals. The question involved was whether the husband was absolutely entitled to the whole estate, or, if not so entitled, whether the use of the property by him was limited to the amount necessary and suitable for his support or limited in any other way, and, if so limited, whether he must exhaust his own property before drawing upon the principal.

It will, of course, be noticed here that under the words of the will, no fuller power could seemingly be given on the face of the will to the husband. While the judgment of the Appellate Division was modified by striking out the modification of the decree of the surrogate, nevertheless it seems pertinent to quote from the opinion of Justice Kellogg in which all concurred. In view of the fact that in the *Briggs Case, supra*, the will said that the husband might use as much as in his judgment was necessary and that he was in no way to be held liable or accountable for the principal so used by

Surrogate's Court, Schoharie County, December, 1923.      [Vol. 122

him, and furthermore, as I understand the decision of the Court
of Appeals, it did not specifically hold that he might use up the
entire fund given by his wife before using his individual property
and thus defeat the rights of the remaindermen, the force of the
reasoning of the Appellate Division is not expressly questioned.
The decision of the Court of Appeals still left the matter of the
exercise of his discretion in the discharge of his duties subject to
the supervision of a court of equity.   The language of the Appellate
Division is as follows:  " Testatrix did not intend that he must
sell the residence and the property therein; neither did she intend
that he should retain the income she gave him and use the principal
of the estate for his personal needs, or that he should save the
principal of the property which she had given him absolutely,
aside from the house, and use the property of the *cestui que trustent*
in place of it.   Manifestly, at his time of life and in his condition,
he cannot deem it necessary and proper to use the funds of his
*cestui que trustent* while retaining ample means of his own to meet
his personal requirements.   The will is fairly satisfied if the power
*to use the principal remains in abeyance* while he has property of
his own, outside of the house and contents, which may be applied
to that purpose, or while he has ample income.   She did not
mean that he should found a great charity, give the principal to
others or give away his property and live upon the principal of
her estate, or that he should so manage that her property should
go to his family and friends rather than to her's.   He was not to
make her will; she was making it for herself, disposing of her
property in her own way.   These and similar purposes, would not
seem to her a ground for the husband to determine that it was
necessary and proper to use the principal of the estate."

*Matter of Briggs* in Surrogate's Court is reported in 101 Misc.
Rep. 191.   The language of the decree of the surrogate as it appears
from the printed case on appeal from the Surrogate's Court to the
Appellate Division, is as follows:

" Ordered, Adjudged and Decreed, that the trust created in and
by the second paragraph of the fourth clause of said Last Will and
Testament is a valid trust; that the title to the personal property
constituting the principal of said estate not otherwise disposed of
by prior portions of said Last Will and Testament is vested in J.
Lynde Briggs and Edward D. Eddy, as trustees for the purposes
therein set forth; that the title of said trust is, nevertheless, subject
to and may be terminated by the *lawful* exercise of a valid power
of disposition conferred upon said J. Lynde Briggs, individually,
in the following language: ' I further direct that he (J. Lynde Briggs)
use during his life time as much of the principal of my said estate

as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used.'

" That said J. Lynde Briggs, under the provision aforesaid has the right to use and consume so much of the principal of said estate as he may in the exercise of his best judgment, in good faith, determine to be necessary and proper under all the circumstances; that said power of disposition conferred upon said J. Lynde Briggs is *not absolute*, but must be exercised by him during his lifetime, fairly, honestly and in good faith, and for his own use and benefit, and in such a manner as not in bad faith to divert the principal of said estate or portions thereof from the beneficiaries of Alice Hall Briggs, deceased, named in said Will, to his own nominees; that said J. Lynde Briggs may be *required to account for any use or disposition of principal made otherwise than as herein limited.* The question of the taking and use of the $6,000.00 mentioned in the petition by J. Lynde Briggs is not passed upon, but is reserved until the accounting, or other proceeding; *and the necessity and propriety of the uses to which J. Lynde Briggs, in the exercise of his judgment, shall devote the principal are to be determined as the cases arise.* That so much and all of the principal of said estate as shall not be consumed by said J. Lynde Briggs during his lifetime for uses and purposes within the limits herein set forth shall continue to be and constitute the corpus of the trust created in and by said Last Will and Testament. That the expectant estates created in and by the fifth clause of said Last Will and Testament are valid, but are subordinate to and may be partially or wholly defeated by the lawful exercise by said J. Lynde Briggs of the said power of disposition."

The Appellate Division upheld the decree of the surrogate except that it modified the decree by striking out the provision " that the title of said trust is, nevertheless, subject to and may be terminated by the lawful exercise of a valid power of disposition conferred upon said J. Lynde Briggs, individually, in the following language: ' I further direct that he (J. Lynde Briggs) use during his lifetime as much of the principal of my estate as in his judgment is necessary and proper and that he in no way be held liable or accountable for such property so used.' "

The Court of Appeals struck out the modification made by the Appellate Division. It will be noted that the gist of the particular clause in the decree of the surrogate which was modified by the Appellate Division, was that the " title, etc., may be terminated by the *lawful* exercise of a valid power of disposition," etc. The Court of Appeals held that the surrogate's decree was correct in that regard. This decision simply left the matter as decreed by

the surrogate, who held that whether there was a " lawful exercise " of a valid power of disposition, that is, the necessity and propriety of the uses to which the husband in the exercise of his judgment should devote the principal, were to be determined as the cases arise, and the Court of Appeals did not hold whether or not the husband had the right to use up the trust fund before using of his own property but left the whole matter of the situation of the husband as to whether he might use out of one fund or the other, to be determined according to the circumstances as they might arise; thus carefully did the courts limit the rights of the life tenant, even where the will specifically said he could use in his judgment and not be liable or accountable for the property used.

In the case at bar Mrs. Niles used no language from which it can be inferred that she gave any discretion to her son as to his being the sole judge when he could resort to the principal nor did she use any words from which the inference can be drawn that she intended he should not be liable or accountable for the principal used. She did not even say that he should have the fund for his use and maintenance. She created a contingency when she said, " if necessary."

A decree will provide for the sale of the real estate as prayed for in the petition. As to the construction of the will, let the decree provide that the true construction is that the executors are entitled to pay over to William Lynn Niles one-fourth of what may be found to be the residuary fund upon the judicial settlement of the accounts and that such payment shall be made to the said William Lynn Niles without exacting from him a bond, he on receiving such payment becoming a trustee for the benefit of the remainder-men, namely, the grandchildren of the testator, living at the time of her death, of said one-fourth of said residuary fund, said Lynn Niles to keep the same invested in such property and securities as by law trustees are entitled to invest trust funds, he not to mingle said trust fund with his own individual property but to keep the same separate therefrom and to keep the same invested in his name as trustee under the terms of the will of Martha Niles and to pay to himself, individually, the interest and income from said trust fund during the term of his natural life for his own individual use and benefit, and that whenever during the lifetime of the said William Lynn Niles, his individual property, means and income shall be, in accordance with his station in life, state of health and circumstances, insufficient for his proper maintenance and support, he may then resort to the principal of said fund and use such portion as may be required for his proper support and mainte-nance, the execution of said trust and powers being at all times

subject to the supervision of a court of competent jurisdiction; and upon the death of William Lynn Niles, whatever may be left of the corpus of said trust fund, to pass to those entitled thereto under said will, the grandchildren of the deceased living at her death having become vested, share and share alike, with said remainder, which remainder is subject to be divested by the use of the principal by the life tenant as hereinabove provided.

Said decree shall also provide that said William Lynn Niles shall file annually with the Surrogate's Court reports of the custody, investment and disposition of the said fund so paid over to him, in substantially the same form as by law required of general guardians of infants.

Decreed accordingly.