In the Matter of the Final Judicial Settlement of the Accounts of Proceedings of MAUDE F. HOGEBOOM, as Executrix, etc., of WILLIAM L. HOGEBOOM, the Deceased Executor, etc., of LINDA C. HOGEBOOM, Deceased.

EMMET S. CROWE, as Executor, etc., of LINDA C. HOGEBOOM, Deceased, and Others, Appellants, v. MAUDE F. HOGEBOOM, Respondent.

Third Department, January 5, 1927.

**Wills — construction — will devised property to husband for life with permission to use principal necessary for " his comfortable maintenance and support " — husband did not have right to use principal of life estate so long as he had other property — petitioner, husband's second wife, seeks settlement of accounts — will of first wife designated successor to husband as executor — in accounting under Surrogate's Court Act, § 257, petitioner is not representative of estate of first wife — petitioner is entitled to attorney's fees up to time of successful termination of action in Supreme Court in her favor brought to adjust affairs of estate — fees of attorney for petitioner thereafter are not allowable — petitioner not allowed commissions under Surrogate's Court Act, § 285, on first wife's estate — husband's estate cannot be allowed commissions as trustee upon principal.**

Under a will devising property to a husband for life, with privilege to use so much of the principal as may be necessary for " his comfortable maintenance and support," the husband does not have the right to use any of the principal so long as he has property of his own.

Accordingly, where the husband remarried and transferred by will all his property to his second wife and used a part of the principal of the life estate, the second wife will be required to return the amount so used.

The second wife, as executrix of the husband, does not in an accounting under section 257 of the Surrogate's Court Act, act as a representative of the estate of the first wife, but is merely the temporary custodian of that property, and the true representative of that estate is a successor trustee designated in the first wife's will to take office upon the death of her husband.

The petitioner is entitled to an allowance for attorney's fees up to the time of the termination of the action begun in the Supreme Court by the successor trustee for the purpose of having the estate adjusted, which action was brought on the theory that the Surrogate's Court did not have jurisdiction and was determined in favor of the petitioner, for up to that time it may be said that she acted for the benefit of the estate.

The petitioner is not entitled, however, to attorney's fees thereafter for she was then in the position of a claimant against the estate, asserting the right to hold property which her husband had used out of the principal and in which contention she was unsuccessful, and, therefore, an allowance made for services rendered by her attorneys after the Supreme Court action was terminated, were not proper.

An allowance was properly made to an attorney for one of the wife's heirs at law, since he rendered services for the estate.

The surrogate improperly directed that the petitioner pay over to one of the heirs at law of the first wife the amount of her estate, because the estate was not then in a condition for settlement and distribution.

The petitioner was not entitled to commissions on the estate of the first wife under section 285 of the Surrogate's Court Act, for she is not a representative included within the terms of that section.

The estate of the husband is not entitled to be allowed commissions as trustee upon the principal of his wife's estate, for he was not a trustee, and furthermore, if he were, his duties as executor and trustee were coincident, but his estate may be allowed commissions upon the income received and paid out.

COCHRANE, P. J., dissents in part.

APPEAL by Emmet S. Crowe and others from a decree of the Surrogate's Court of the county of Rensselaer, entered in the office of said Surrogate's Court on the 10th day of May, 1926.

*Heaton & Mambert* [*Alvin E. Mambert* of counsel], for the appellants.

*William J. Roche* and *John P. Albertson* [*William J. Roche* of counsel], for the respondent.

*Clark Cipperly*, for Minetta E. Crowe.

VAN KIRK, J. This is an accounting by the executrix of a deceased executor. Linda C. Hogeboom died October 2, 1918. She named her husband, Dr. Hogeboom, as the executor of her will. Dr. Hogeboom married again in October, 1919. He died July 30, 1924, leaving a will in which he named his second wife, Maude F., his executrix. In October, 1924, under section 257 of the Surrogate's Court Act, she filed a petition and presented an account for the acts of Dr. Hogeboom as executor of the will of Linda C. All the parties interested were cited, including the appellant Emmet S. Crowe, brother of Linda C. Hogeboom, whom she had named in her will to succeed Dr. Hogeboom as executor. Objections to the accounting were filed by these appellants and upon this appeal they seek to have certain items, credited to the accounting party, disallowed.

The accounting party was credited with $6,559.35, for moneys used from the principal of the estate of Linda C. by Dr. Hogeboom for his maintenance and support, and with $1,213, for funeral expenses and physicians' bills of Dr. Hogeboom. The right to these credits depends upon the construction of the 5th clause of the will of Linda C. Hogeboom, which is as follows: " I give the use of all the rest, residue and remainder of my property, both real and personal, of whatsoever name and nature, unless hereinafter differently disposed of, to my husband William L. Hogeboom, for and during his natural life, he to have only the income thereof, unless he shall need it for his support and maintenance, when he

shall have the right to use so much of the principal which together with the income thereof shall be necessary for his comfortable maintenance and support, and in such case, I direct that his funeral expenses be paid from and out of my estate." Upon his death she gives some small bequests to relatives and all the remainder to her two brothers. She had no nearer relatives. In the 7th clause she gives to her husband power to sell her real estate and to invest and reinvest her personal property, " but no such power shall give him any more control over the proceeds thereof, than is hereinbefore given." Authorities are unnecessary to establish that, in construing a will, its words and expressions should be given their usual and ordinary meaning and the testator's intent determined therefrom in the light of the existing circumstances and conditions at the time the will was made.

At the time the will of Linda C. was made and at the time of her death Dr. Hogeboom was a practicing physician in the city of Troy. He had a small estate, largely invested in securities, which at the time of his death amounted to about $23,000. Linda C. had an estate of about $27,000. So far as appears in the record Dr. Hogeboom and Linda C. lived comfortably upon the income from his practice and from their investments.

We think the testatrix intended to and did give to Dr. Hogeboom the income from her estate during his life, and all the rest and remainder thereof to those of her own blood. Along with this expressed intent she inserts a modification, conditioned upon her husband's possible future needs. The time might come when he would not earn and when his own estate would be exhausted; against the consequence of such need she provided as follows: He is to " have only the income " of her estate " unless he shall need it for his support and maintenance, when he shall have the right to use so much of the principal " as shall be necessary for that purpose. Dr. Hogeboom's acts disclose his understanding of the intent of his wife. He used no part of the principal until the last few months, less than five, of his life. Before these months his earning power had failed and the income from his small estate and that of his wife was insufficient for his maintenance and support. When that condition arose, he did not immediately use from the principal of his wife's estate. He sold two of his own securities, one of $3,500, and one of $1,300, and expended the proceeds for living expenses. But near the end he changed his attitude and used from the principal as above stated. This, though mistaken, was natural. His own estate was small; the income from it would not maintain his second wife. She was his sole legatee; she possessed no property. She was a trained nurse and was rendering to him

the services which only a trained nurse could. Her devotion and loyalty to him naturally would make a strong pull upon his feelings and he yielded. While these latter considerations explain the doctor's change of attitude, they do not help us in determining the intention of the first wife. In her mind there was no thought of allowing her estate to be used in order to save the doctor's estate; and this is what really has resulted from the decision in this case. The property of the testatrix has been taken from her blood relatives and has been transferred, not by herself but by another, to the second wife. This the language of the will does not permit; it does not permit the doctor to use from the principal for his reasonable comfort and support, except on the happening of one condition; that is, that he needs it; not needs the comfort and support, but needs the money for comfort and support. That need the testatrix did not contemplate would arise until the doctor's property had been exhausted. That view is confirmed by the fact that she provided even for payment of his funeral expenses only in case his estate would not furnish the necessary funds.

The surrogate in this case felt obliged to follow the decision in *Rezzemini* v. *Brooks* (236 N. Y. 184). But that case is not an authority controlling here. In that case, as well as in *Holden* v. *Strong* (116 N. Y. 471), which the Court of Appeals cited as controlling, a fund was set apart in trust; the bequest was of full maintenance and support from this fund. No condition of " need " or of any kind was attached; the maintenance and support was to be furnished first from the income and second from the principal to the extent that the income would not furnish them. The Court of Appeals commented upon the fact that the testatrix did not provide that the principal should be paid to the remaindermen, but only " so much thereof as may then remain," and says: " The presence of the words [those quoted], however, does not entitle the remaindermen to any estate in the property of the testatrix save only in the event that upon the death of the life beneficiary a part of the principal then remains undisposed of." And the court said that the beneficiary was to have his income from this trust fund regardless of what private funds he might have.

Since there were sufficient means in the estate of Dr. Hogeboom to provide (1) for his comfortable maintenance and support and (2) for his funeral expenses and doctors' bills, the decree must be modified by striking out the two items credited to the accounting executrix for those purposes. Neither the ante-nuptial agreement nor the transfers of his property to his second wife shortly before his death can defeat her intent or change the disposition of his first wife's estate.

The other credit items objected to are allowances to attorneys and for commissions. We have considered the two items, which we shall call the claims, which involve the construction of the will, the principal question in the case, out of order. It is now necessary to consider the relation of the petitioner to the estate and the order of events. The petitioner acted under section 257 of the Surrogate's Court Act (Laws of 1920, chap. 928) as it existed prior to the amendment of 1926 (Laws of 1926, chap. 669). The accounting in that section authorized may be compulsory or voluntary. The surrogate has the same jurisdiction to compel the executor of a deceased executor to "account, which it would have against the decedent if his letters had been revoked, or he had been removed, by a surrogate's decree." Or an executor of a deceased executor "may voluntarily account for the acts and doings of the decedent, and for the trust property which had come into his possession or into the possession of the decedent." In either form of proceeding "all persons who would be necessary parties to a proceeding commenced by such decedent for a judicial settlement of his accounts shall be brought in." Finally, "If upon such accounting, the surrogate finds that there can be a distribution, in whole or in part, to the parties entitled thereto, he may make a decree accordingly, and he may also therein direct payment and delivery, by the accounting party, upon such terms and security as may be proper, of the balance, if any, of said estate or fund. For the purpose of such payment and distribution the accounting party shall have all the powers and duties of the deceased representative * * *." Thus the accounting executor is in no wise the representative of the estate of which his testator was the executor. He is merely the temporary custodian of the property of that estate which has come into his possession. (*Matter of Hayden*, 204 N. Y. 330, 338.) He has no powers of administration (Decedent Estate Law, § 121, as added by Laws of 1909, chap. 240; *Matter of Duncan*, 181 App. Div. 91) except that, if the surrogate finds that there can be distribution in whole or in part, he may so direct; and then, "for the purpose of such payment and distribution," and for that purpose only, the accounting party has "all the powers and duties of the deceased representative." This section 257 does not take from an executor named in a will any part of his right to administer the estate, except as to the extent above stated. The chief purpose of this section in respect to a voluntary accounting is to provide a way by which the estate of a deceased executor can be separated from the estate of which he was executor, to the end that both the accounting party and his testator be freed from liability to the preceding estate.

We turn now to the order of events. The account filed disclosed, it is conceded, the property of the estate of Linda C., which Dr. Hogeboom had in his possession at the time of his death. It also disclosed the two claims against the estate. While these were claims of Dr. Hogeboom, Maude F., having succeeded to all of his property, was the real claimant. These claims involved a substantial amount of the estate. Until they had been adjusted the distribution of the estate in whole or in part could not be had, so that the petitioner could not succeed to any rights of administration. The nature of the claims had been disclosed; also that Dr. Hogeboom about two months before his death had transferred all of his property to Maude F.; in consequence, if the claims were not allowed, it might become necessary to set aside this transfer in part in order to turn over to the estate of Linda C. the full amount. Whether or not these claims should be paid or contested was solely for the executor under the control of the surrogate to decide. He was named by Linda C. to be upon the death of Dr. Hogeboom her executor " for the purpose of settling up and distributing my estate." Letters testamentary had been issued to him and he was made a party to this accounting. Maude F. could not supplant him and perform his duties. The executor then brought an action in the Supreme Court for adjusting all of the affairs of the estate, claiming among other things that the Surrogate's Court did not have jurisdiction to set aside the transfer to Maude F. He asked an injunction restraining further proceedings in the Surrogate's Court. A temporary injunction was granted, with an order to show cause. On the return day the Special Term held that the Surrogate's Court had jurisdiction to hear and determine all the issues. It vacated the temporary injunction on condition that Maude F. deposit with the surrogate $6,733.67 for protection of the estate of Linda C. There has been no appeal from this order and no further proceedings in the Supreme Court action have been taken and the Supreme Court action in effect has been terminated.

The next item of credit disputed is $1,185.50. This was paid to petitioner's attorneys and it is undisputed that this is full compensation for their services up to the termination of the Supreme Court proceeding at least. The value of the services of the attorneys is not disputed; in a sense the issue determined in the Supreme Court was of value to the estate in expediting its settlement. All of the necessary parties had been brought into the proceeding, all matters of the estate could be settled without the expense of a further citation and a separate accounting by the executor, and Maude F. was so far successful. We have concluded that, under the special circumstances of this case, this credit may be allowed.

From the beginning of the Supreme Court action Emmet S. Crowe represented the estate of the deceased and, from the termination of it at least, Maude F. stood solely as a claimant against the estate. Whatever expenses she incurred for attorneys' services thereafter were in her own behalf and against the interest of the estate. Thereafter the proceedings in the Surrogate's Court were continued and all the evidence in this case was taken. This evidence bore upon the construction of the will and the two claims. This work being completed the attorneys for the petitioner applied to the court for additional compensation and the surrogate allowed fees in the sum of $500, which in the account is represented by the two credit items, $270 and $230. The application was made on the ground that the $1,185 item had not fully paid the attorneys for their services since the termination of the Supreme Court action, including the preparation of papers for final decree. They will not be called upon to prepare any papers upon the accounting and the services for which an allowance was made were rendered in behalf of an unsuccessful claimant against the estate and against the interest of the estate. During all this time the executor alone was defending the interest of the estate. We do not think that the surrogate could put upon the estate the burden of both sides of this contest, or that he had authority, under the circumstances here, to charge the estate with the expenses of an unsuccessful claimant. The two items aggregating $500 should be disallowed.

The surrogate allowed to attorney Cipperly $250. While he is of record as attorney of Minetta E. Crowe, his claim for the allowance is for services rendered to and in the interest of the successor executor and on that account we think was properly allowed.

The items to Dr. Schneider for costs, seventy dollars, and to Morris, for costs, fifty dollars, must be disallowed. Their claims made up the one thousand two hundred and thirteen dollar item, which has been disallowed. The surrogate directed that the accounting executrix distribute and pay over to Minetta E. Crowe her share. We have already held that the estate was not in condition for settlement and distribution upon the account of Maude F., as filed, and the surrogate was not justified in making this order.

There remains the matter of commissions. The surrogate allowed to the accounting executrix " Full commissions upon the amount so received as aforesaid and upon the amount so directed to be paid to the said Minetta E. Crowe, and that she be allowed for the estate of the said William L. Hogeboom, deceased, commissions upon the amount directed to be paid out by her to Emmet S. Crowe, as executor of the will of Linda C. Hogeboom, deceased, commissions at one-half rates, all of which commissions amount to

$415.55." We think this order was erroneous. She is making an account for the deceased executor. Commissions are paid "for the care and management of the estate." (*Wagstaff* v. *Lowerre*, 23 Barb. 209; *Matter of Bushe*, 227 N. Y. 85, 89.) These are allowed only to representatives of the estate, executors, administrators, guardians or testamentary trustees (Surr. Ct. Act, § 285); the petitioner is not such a representative. The commissions which can be allowed as a credit are those which could be allowed to the estate of the deceased executor as due to him for the care and management of the estate to the date of his death. Upon his accounting in 1919 Dr. Hogeboom was allowed full commissions and he was directed to pay out and distribute " as provided by the will." While in some cases the same person in the same estate may have commissions both as executor and trustee, this is not the rule " in every instance where trust duties are imposed upon an executor. Where, by the terms or true construction of the will, the two functions with their corresponding duties coexist, and run from the death of the testator to the final discharge; interwoven, inseparable and blended together, so that no point of time is fixed or contemplated in the testamentary intention at which one function should end and the other begin, double commissions or compensation in both capacities cannot be properly allowed." (*Johnson* v. *Lawrence*, 95 N. Y. 154, 159; *Matter of Ziegler*, 218 id. 544, 551.) In the latter case the will was examined " to determine whether the two functions of executors and trustees with their corresponding duties coexisted, and whether the testator contemplated that the parties named by him should exercise the joint functions as one office; " and double commissions were refused. In the instant case there is no mention of a trustee; the income of nearly all of the estate was to be paid by Dr. Hogeboom to himself; there was no actual change of possession from Dr. Hogeboom as executor to Dr. Hogeboom as trustee. The expressed intention is that Dr. Hogeboom as her executor should have full charge of her estate, including investing and reinvesting, until his death and then the successor executor would settle and distribute the estate. We conclude that the estate of Dr. Hogeboom may not be allowed commissions as trustee upon the principal, but that it may be allowed commissions upon the income received and paid out.

Since all the parties necessary to a final settlement of the estate are in court and no other claims can be filed, because her estate had been settled by decree in 1919, final settlement of the estate may be had.

The decree should be reversed and the matter remitted to the Surrogate's Court of Rensselaer county to correct the account by

striking out the credit items in accord with this opinion and to determine the commissions that may be allowed to the estate of Dr. Hogeboom; to require the petitioner to pay over the amount found due the estate of Linda C. Hogeboom; to determine what commissions and allowances should be made to the successor executor and to his attorneys; and to finally settle the estate of Linda C. Hogeboom.

The large expenses to which this small estate has been subjected are due almost entirely to the claims made by Mrs. Hogeboom. She has failed to sustain these claims. We conclude, therefore, that one bill of costs should be allowed to the appellants against Maude F. Hogeboom.

HINMAN, McCANN and DAVIS, JJ., concur; COCHRANE, P. J., concurs, except he votes for the allowance of the $500 item.

Decree reversed on the law and facts and the matter remitted to the Surrogate's Court of Rensselaer county to correct the account by striking out the credit items in accord with the opinion and to determine the commissions that may be allowed to the estate of Dr. Hogeboom; to require the petitioner to pay over the amount found due the estate of Linda C. Hogeboom; to determine what commissions and allowances should be made to the successor executor and to his attorneys; and to finally settle the estate of Linda C. Hogeboom, with one bill of costs to the appellants against Maude F. Hogeboom.

The court disapproves of the allowance of the following items: $6,559.35, $1,213, $270, $230, $70, $50, and commissions $415.45 [$415.55].