In the Matter of the Estate of GEORGE W. GATEHOUSE, Deceased.

Surrogate's Court, Kings County, November 27, 1933.

*Wrenn & Schmid,* for the petitioner.

*Dunnington, Gregg & Church,* for Kathryn H. Coombs.

WINGATE, S. The present proceeding raises again the frequently litigated question of testamentary interpretation, as to whether, on a gift for support and maintenance, the private resources of the beneficiary shall be taken into consideration in determining the amount properly payable to him for this purpose from the funds of the estate. An examination of reported cases on the subject indicates that this question is one of growing interest, since it has been raised almost as many times in the last decade as during the entire preceding period of New York legal history.

In the case at bar, the testator, by the "fourteenth" item of his will, gave the residue of his estate to his executors and trustees with directions "To pay the entire income therefrom to my wife, Kathryn H. Gatehouse, for and during her natural life, and should the income prove insufficient to maintain my wife in her accustomed style of living, then I direct my Trustees in their discretion to apply from the principal so much as may be necessary to maintain my wife in her accustomed style of living. I further direct my Trustees to pay from the principal all necessary expenses incurred for hospital or medical attention or other extraordinary expenses that may be necessary for the care and comfort of my wife. In the event of any unforeseen or unexpected emergency that will require additional funds for the necessary care of my wife, I authorize and direct my Trustees, or either of them, in their discretion, to make such payment as to them or either of them may seem best. It is my intention to amply provide for the care and comfort of my wife and the discretion given to my Trustees is to be used by them in a broad sense, and I hereby expressly relieve them or either of them from the necessity of accounting to any person except my wife for the exercise of their discretion.

"*Two*. Upon the death of my wife, should any of the principal then remain, I give, devise and bequeath the principal and all accrued and unpaid income to those who at that time shall constitute my next of kin according to the intestate laws of the State of New York."

It will be observed that the direction for the benefit of the wife is naturally divisible into three parts:

*First*. For her ordinary maintenance, for which object the entire income is given with the further provision that "should the income prove insufficient to maintain my wife in her accustomed style of living, then * * * to apply from the principal so much as may be necessary to maintain my wife in her accustomed style of living."

*Second*. "All necessary expenses" connected with illness "that may be necessary" are to be paid from principal; and

*Third*. Expenses arising by reason of any unforeseen emergency "that will require additional funds for the necessary care of my wife" are also to be paid, obviously, from principal.

Whereas the second and third directions in the foregoing enumeration are important as throwing light upon the general testamentary intent, the present litigation is concerned solely with the first.

At the time of the executorial accounting in 1929, a question having arisen in respect to the annual sum necessary to maintain the beneficiary in her accustomed style of living, the matter was

fully litigated and such sum was fixed at $3,600 a year, which, in view of the income of the trust at that time, involved an annual invasion of principal to the extent of $740.

It has now been made to appear that the widow has remarried, with consequent obligation upon her present husband to support and maintain her (*De Brauwere* v. *De Brauwere*, 203 N. Y. 460, 464; *Finkelstein* v. *Finkelstein*, 174 App. Div. 416, 419), and it is contended that by reason of this fact, further payments for this purpose from the estate of her first husband are improper.

This position is contested by the *cestui que trust* for two reasons, *first*, on the ground that the terms of the will absolutely entitle her to support, and *second*, that her second husband has fallen on evil days and is unable to maintain her. If her first contention were to be overruled, an issue of fact would be presented for trial on the second, but if the first position is sound, the second is immaterial.

Under ordinary circumstances, as has been pointed out on innumerable occasions, particular precedents are substantially valueless in testamentary interpretation. (*Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann*, 137 Misc. 113, 114; affd., 232 App. Div. 698; *Matter of McCafferty*, 142 Misc. 371, 373; affd., 236 App. Div. 678; *Matter of Hopner*, 148 Misc. 748, 750; *Matter of Burling*, Id. 835, 837.) In the present instance, however, the paucity of possible variations in testamentary language in this regard arouses interest in previous adjudications respecting the subject. Of the twenty-five most frequently cited decisions of New York courts bearing on the question, seventeen have determined that the private sources of support of the beneficiary have no bearing upon his rights in a testamentary gift for that purpose, five have reached contrary results, and in one, *dicta pro* and *con* are to be found in the respective decisions of the Appellate Division and of the surrogate, the modification by the Court of Appeals being inconclusive on the question.

The first pertinent decision in chronological order is that of *Stewart* v. *Cuyler* (17 Barb. 482), written in 1854. While no will was there in question, it is obvious that the intent of the parties to the transaction amounted substantially to a testamentary disposition.

Defendants gave plaintiff a bond which recited that the latter had loaned the former substantially her entire possessions upon which she was compelled to rely for support; its condition was that interest on the principal sum should be paid her quarterly and also, such principal sums of $100 on ten days' notice, " as the said Nancy may need and shall require to be paid for her comfortable

support and maintenance." On her death any remaining principal was to be paid to specified persons.

In a suit upon the bond it was shown that she had demanded a $100 payment for her support which defendants had failed to pay. The latter offered to show that she did not need or require any portion of the principal for her comfortable support and maintenance. In sustaining a refusal to receive this evidence, the court said (at p. 487): " If she had other means, she was not bound to resort to them."

The first genuine testamentary case involving this subject arose before the Court of Appeals in 1865 in *Forman* v. *Whitney* (2 Abb. Dec. 163). There the will gave the widow for life the interest of $3,000, " or so much of said interest as my executors may deem necessary, for her comfort." It was shown that she was being supported by her son under an enforcible agreement. It was held that she was entitled to the entire income, the court saying (at p. 166) that she was entitled " to possess those nameless currents of enjoyment which take their rise in the assurance of money in the pocket and more to come."

In *Freeman* v. *Coit* (27 Hun, 447; affd., 96 N. Y. 63), decided in 1882, the testatrix erected a trust, the income to be used " to pay * * * for the support, maintenance and education of " her child.

The father, who was executor, so applied the income, thereby partially exonerating himself from his natural obligation in this regard. In upholding his action, the court said (at p. 449): " Her direction was positive that the income * * * should be devoted to the support, maintenance and education of the child, and under this decided and unequivocal direction her father, as executor, was clearly authorized to make that disposition of the income of this portion of the estate, as far as it was required for this purpose."

In *Matter of Wood* (1 Dem. 559) a provision for the widow directed that the executors should pay her " a sufficient sum per annum to make up to her an income of $3,000." The court held (at p. 566) that she was entitled to receive this from the estate, irrespective of any private income she might have.

The decision in *Nahmens* v. *Copely* (2 Dem. 253) was somewhat analogous to that of *Freeman* v. *Coit* (*supra*), it being determined that a legacy of the income of $5,000 to be applied " for the support and education " of a granddaughter was applicable for that purpose, despite the ability and willingness of the father to defray the expense thereof.

*Holden* v. *Strong* (116 N. Y. 471), the next case in chronological order to be noted, is, perhaps, the leading precedent in this State on the general subject. The testator there gave the residue of

his estate in trust for his son, vesting the trustee with " full power and authority to use so much of the said trust fund, either interest or principal " as shall, in the " judgment and discretion " of said trustee " be necessary for the proper care, comfort and maintenance " of his son. In determining that the beneficiary was entitled to receive his entire support from the fund irrespective of his other means or sources of income, the court said (at p. 475): " We do not understand that in order to receive the benefit of the provisions of the will it is necessary for him to remain idle and refrain from all personal exertion, neither does the fact that he is frugal and saving and has accumulated a fund which he has deposited in the bank deprive him of the right to the support provided for him."

The same result was attained in *Matter of Riley* (4 Misc. 338, 341), where a trust legacy was given to a brother in satisfaction of a claim against decedent with a direction to the trustee " to use it for the comfortable support of my said brother."

The questions decided in *Swarthout* v. *Rainer* (143 N. Y. 499) and *Matter of Parsons* (39 Misc. 126) concerned the accountability of the estates of life tenants who had been granted powers of invasion of principal for maintenance. Both decided that the acts of use by the life tenants were presumptively valid.

The trust shown in *Matter of Reed* (22 App. Div. 328; affd., 160 N. Y. 702) directed the trustee " to apply said balance and income to the support and maintenance " of testator's wife, and disposed of the remainder, if any was left. The court determined (at p. 330) that she was entitled to her support from the estate without taking her own private means into consideration.

In *Manning* v. *Sheehan* (75 Misc. 374) the testator erected a trust for the benefit of his daughter, directing that the income be paid her " and such additional sum out of and from the principal of said fund as to them may seem necessary for the support and maintenance of my said daughter * * * and upon the death of my said daughter * * * I direct that the remainder of said fund shall pass to and be paid over to the lawful heirs of said Rose Manning."

The life tenant was married but living apart from her husband and it was contended that he should be compelled to support her rather than that the principal of the trust should be invaded.

In overruling this contention, the court said (at p. 377): " a decree should be made to the effect that the will not only authorizes the trustee to pay out of the principal of said trust fund so much as may be necessary, supplementing the income thereon, to afford

the plaintiff a reasonable support, but that it is his duty as trustee to make such payment."

*Matter of Briggs* (101 Misc. 191; affd., 180 App. Div. 752; affd., 223 N. Y. 677) is frequently cited as authority for all manner of diverse positions on the subject now under consideration. The pertinent facts are that testatrix erected a trust for her husband with income payable to him for life, and further provided: " I further direct that he use during his lifetime as much of the principal of my estate as in his judgment is necessary and proper and that he in no way be held liable for such principal so used."

The husband claimed that by reason of the discretionary language employed, he was entitled to transfer the entire principal to himself absolutely and actually so transferred $6,000 thereof.

Although the decree of the surrogate was modified by the Appellate Division, which was in turn modified by the Court of Appeals, the sole question decided, and upon which all the courts apparently agreed, is stated as follows (at p. 202 of the surrogate's opinion): " The power and duty of the court to determine   *   *   *   whether he, in good faith, exercised his judgment, and whether, in his honest judgment, the use which he made of the property was necessary and proper, limits the power of Briggs to dispose of the entire estate absolutely without any possible review of his action.
 " *   *   *   any disposition of principal by him, which fairly commends itself to his judgment, is within the scope of his authority, and keeping within those lines he may dispose of it all in his lifetime for his own benefit."

The question as to whether or not the husband could actually use portions of the principal for his needs, if he had sufficient property of his own, was not litigated, but the opinion of the surrogate (at p. 205) contains an affirmative dictum, while one of the Appellate Division (at p. 759) is negative. As is pointed out by Surrogate Beekman in a careful analysis of this case (*Matter of Niles*, 122 Misc. 17, 29), the modification by the Court of Appeals in no way touched upon the question at issue in the instant proceeding.

*Matter of Ward* (186 App. Div. 261) is an unsatisfactory authority in this connection, for the reason that the wording of the will is not set forth, the opinion merely stating that a $6,000 trust fund was erected with directions " to pay over the income thereof to the petitioner for her support and maintenance during lifetime " with the addition " that in the event that the income prove insufficient for such proper care then the trustee may use so much of the trust principal as may be necessary for such purpose." It was held

that she was entitled to receive from the fund the yearly sum necessary for her support.

In *Matter of Allen* (111 Misc. 93, 119; affd., 202 App. Div. 810) Surrogate SLATER construed a direction to pay " such a sum as my said executors in the exercise of their discretion shall deem necessary for the proper maintenance and support of my said wife," as " in exoneration of her own estate and in addition to whatever else she may be entitled to receive under the provisions of testator's will."

Likewise, Justice STEPHENS in *Bruff* v. *Rochester Trust & S. D. Co.* (118 Misc. 394, 397) held in respect to a trust " to use and expend the net income  *  *  *  for the support and maintenance of " the named beneficiaries, that " Any suggestion that the moneys were relieved from appropriation to the trust purposes for the reason that Mr. Bruff was able by his own exertions and from his own resources to maintain himself and wife in comfort is without merit. It was not necessary for him to remain idle to entitle him to the benefit of the provisions made for him and his wife nor the fact that he had other means by which they could be supported deprive him of his interest in the trust." (See, also, the report in respect to the same will in 125 Misc. 579, at p. 582.)

The second leading case on the subject is *Rezzemini* v. *Brooks* (236 N. Y. 184), decided by the Court of Appeals in 1923. Here the testatrix erected a trust for an incompetent son, who was possessed of some independent means, providing that the income should be used for him, and continuing: " If the income from my estate shall be insufficient for the proper support of my said son, then in that event, I authorize and empower my said trustee to expend so much of the principal thereof as may be necessary for that purpose." The remainder, " or so much thereof as may remain," was given to others on the death of the son. The court, following the language and reasoning of *Holden* v. *Strong* (*supra*), determined that the son was entitled to receive his entire support from the estate in exoneration of his individual property.

The next five cases, in chronological order, to be noted attained the result that the private resources of the beneficiary must be taken into consideration in determining the sum which he was entitled to receive from the estate. The first of these is *Matter of Niles* (122 Misc. 17) in which the income of one-quarter of the residue was given a son for life with the further provision: " and if necessary for his support and maintenance to use of the principal herein given and devised to him he may do so." The remainder, following his death, was bequeathed to others.

The second is *Matter of Johnson* (123 Misc. 834) in which the

testatrix erected three separate trusts for three of her children, identical in terms except for the difference in the names of the life tenants. Each directed payment of the income to the particular child and continued: "And an additional amount from the principal in the discretion of said Executors in case " the named beneficiary " needs it for care, support or maintenance on account of sickness or any other cause and also if any of his children need it for his or her education." The remainder, following the life estate, was given in equal shares to the children of the life tenant.

The third is *Matter of White* (125 Misc. 901; affd., 217 App. Div. 750). Here the testatrix erected a trust for her incompetent daughter, directing her trustees either to pay all of the income to her " or in the discretion of my executors, * * * to devote such income * * * to the care, support, maintenance and comfort of my said daughter. If in the judgment of my executors * * * such income * * * be insufficient for said purposes * * * I authorize them * * * to use the principal of the trust estate or so much thereof as is necessary."

It was shown that the daughter, to the mother's knowledge, had other property which yielded about $9,900 annually.

Testatrix directed that on the death of the daughter the principal should be divided among others.

The fourth case achieving this result is *Matter of Hogeboom* (219 App. Div. 131), where the testatrix gave the remainder of her estate to her husband, " he to have only the income thereof, unless he shall need it for his support and maintenance, when he shall have the right to use so much of the principal which together with the income thereof shall be necessary for his comfortable maintenance and support." The remainder, following the death of the life tenant, was given to others. The husband used a portion of the principal while he still possessed assets of his own. In holding this action to have been improper, the court said (at p. 134): " This the language of the will does not permit; it does not permit the doctor to use from the principal for his reasonable comfort and support, except upon the happening of one condition: that is, that he needs it; not needs the comfort and support, but needs the money for comfort and support." ·

The court thereupon distinguished the *Rezzemini* and *Holden* cases on the ground that in them " a fund was set apart in trust; the bequest was of full maintenance and support from this fund. No condition of ' need ' or of any kind was attached; the maintenance and support was to be furnished first from the income and second from the principal to the extent that the income would not furnish them."

The fifth and final decision achieving a like result is *Matter of Sharp* (137 Misc. 644). Under this will testator left all his property to his widow for life, the bequest reading in part: " Should the income from my property be insufficient for her proper maintenance and support, I hereby direct that she shall use a sufficient amount of real and personal property, or both, for such maintenance and support."

Following the death of the widow various general legacies were given, the first being provided to be paid " from my personal estate if there still remains that amount."

The widow was in receipt of a pension and the question was whether this should be considered in the determination of the sum which was to be paid from the estate for necessary support before resorting to the principal. The surrogate (at p. 646) determined this question in the affirmative.

There remain for note three comparatively recent determinations, all made in 1931, in which the courts reached the same results as were attained in the *Holden* and *Rezzemini* cases, that the private means or sources of income of the beneficiaries could not properly be taken into consideration in the determination of the amounts which they were entitled to receive under the terms of the respective trusts. These are *Matter of Shea* (140 Misc. 710; modfd., on other grounds, 234 App. Div. 176); *Matter of Blanchard* (232 id. 361) and *Matter of Van Zandt* (231 id. 381).

In the *Shea* case the testamentary direction to the trustees was that they pay from income " as much of the same as in their judgment shall be deemed necessary for the comfortable maintenance and support of my beloved brothers * * *. Should the said income * * * not be sufficient for the comfortable support and maintenance of my said brothers * * * I * * * authorize and empower my said trustees to use such portion of the principal as in their judgment may be necessary."

In *Matter of Blanchard* the income of the trust was given to the widow with the addition that in case such income was not sufficient for her comfortable support and maintenance, then there might be used of the principal " whatever sum as shall be necessary for such maintenance and support as aforesaid, which sum or sums shall from time to time be paid by said trustee to my said wife for the purposes as aforesaid, to the full extent of keeping her comfortable and properly fed, clothed and cared for."

All of the estate " that there shall or may be remaining " at the death of the wife was bequeathed " absolutely " to another.

Finally, in *Matter of Van Zandt*, testator gave the life use of his estate to his wife and authorized his executors, in the event that

its income should be insufficient for her " care, support and maintenance, to expend for that purpose as much of the corpus  *  *  * as, in their opinion, might be necessary."

An analysis of the foregoing precedents demonstrates that in all except two of their number, the courts have carefully analyzed the donative language to determine precisely what was given by the will. Obviously, in every instance, four possibilities were open to the testator; first, he might give the entire principal, which would carry with it the income to be derived therefrom; secondly, he might give merely the income, with no right to invade the principal; thirdly, he might give part or all of the income with a conditional right either to the balance of the income, if all were not given, or to invasion of the principal, depending on a prescribed demonstration of extraneous conditions; and, fourthly, he might give " support and maintenance " charging its cost on principal or income or both. The true nature and distinguishing characteristics of all of these gifts must be obvious with the possible exception of the last, concerning which a few words may be appropriate.

The extent and value of any testamentary gift other than that of an identified thing or a specified sum of money is ascertainable solely by reference to extraneous conditions.   Thus the amount of a residuary gift depends on the debts of the decedent, the amounts payable for funeral and testamentary expenses, and possibly other factors wholly dehors the will.   Likewise the value of the life use of a specified sum of money is dependent upon the acts of the fiduciary in its investment, the state of the money market and many other conditions which are unascertainable from the testamentary instrument itself.   The same applies to a gift of " support and maintenance."   This calls for the payment of an ascertainable sum, the exact amount of which will depend on another set of extraneous circumstances, including the manner of living of the donee, the cost of such varied elements as food, lodging, clothing, etc.

As has many times been indicated, the purpose in the mind of the testator in the making of a gift is wholly immaterial so long as such purpose does not modify the terms of the gift itself, and the latter remains absolute and unqualified.   (See *Wetmore* v. *St. Luke's Hospital*, 56 Hun, 313, 321; *Matter of Smallman*, 138 Misc. 889, 897; *Matter of Tuozzolo*, 141 id. 251, 253.)

A gift of " support and maintenance," if absolute, is, therefore, merely a gift of a sum of money, the amount of which is ascertainable by a calculation of the component effect of extraneous circumstances and contributing factors, and differs neither in nature nor in kind from an ordinary gift of income, the sole diversity arising

from the difference of the factors which unite in determining the particular number of dollars which the donee thereof is entitled to receive.

It follows, therefore, that when an absolute gift is made of the sum which is compounded from the elements going into the computation of " support and maintenance," it assumes the nature of any other absolute gift and is not subject to defeat by any extraneous condition. No one would have the temerity to assert that because a legatee of a gold watch already possessed such an article, or because a life tenant, who was given the income of a $10,000 trust, had income of his own, the testamentary gift to the legatee would be defeated for this reason. The same considerations apply to an absolute gift of " support and maintenance," and the fact that the intended recipient may be able to supply his needs in this regard from other sources is wholly immaterial in any evaluation of his rights to the testamentary gift of the sum which would ordinarily be required for this purpose.

On this basic principle, it is, therefore, obvious that the courts correctly determined that the personal circumstances of the beneficiaries were immaterial under the language of the wills construed in *Freeman* v. *Coit, Matter of Wood, Nahmens* v. *Copely, Holden* v. *Strong, Matter of Riley, Matter of Reed, Manning* v. *Sheehan, Matter of Ward, Matter of Allen, Bruff* v. *Rochester Trust & S. D. Co., Rezzemini* v. *Brooks, Matter of Shea, Matter of Blanchard,* and *Matter of Van Zandt.* The wording employed in each of these cases, as hereinbefore noted, falls clearly within the fourth alternative above, of an absolute gift of " support and maintenance," the cost of which was charged upon principal or income or both.

Two of the noted cases, the testamentary directions of which were to identical effect with those just considered, attained diverse results. These are *Matter of Sharp* and *Matter of White.* For the basic reasons stated, and on the overwhelming weight of authority noted, the court is forced to the conclusion that their results were incorrect.

The remaining authorities reviewed fall into the third classification noted, of a gift of part or all of the income with a conditional right either to the balance of the income, if all were not given, or to invasion of the principal. The cited authorities which fall into this category are *Matter of Briggs, Matter of Niles, Matter of Johnson* and *Matter of Hogeboom.* In all four the income was given absolutely to the life tenant, but power to invade principal was expressly made subject to conditions; that in *Matter of Briggs* was that such use be " necessary and proper;" in *Matter of Niles,* " if necessary for his support and maintenance;" in *Matter of John-*

*son,* in case he " needs it for·care, support and maintenance," and in *Matter of Hogeboom,* " he shall need it for support and maintenance." In all of these cases an affirmative demonstration respecting the state of the financial affairs of the possible recipient was made an express condition precedent to any right to receive more than the income, which was absolutely given, and under such circumstances it is obvious that the decisions effectuating such conditions and requiring that the personal resources of the claimants be such as to show that their affairs demonstrated such need, were obviously correct.

Applying these principles to the case at bar, the testamentary direction made an absolute gift of all income to the wife. It also directed an invasion of principal to the extent necessary to maintain the wife " should the *income* prove insufficient " for that purpose, not, as in *Matter of Hogeboom* and similar cases, *if* she needed it. Here is, therefore, an absolute gift of maintenance to the wife which is charged on the entire estate. She is entitled to receive it irrespective of her outside resources in like manner to the supposed donee of the watch who already possessed one.

A single additional question is raised by the complaint of the beneficiary that she has failed to receive any payment whatsoever from the trustees since August 1, 1933, and that there is a partial arrear in the sum due on that date. The trustees have alleged that the entire principal fund has been invested in three mortgage participation certificates, that the larger two of these securities are in default, and that the small amount of cash on hand and the avails of the remaining participation are required for use in preserving the principal of the others. No question is raised by the beneficiary concerning the propriety of the making or retention of these investments by the trustees. If the situation is as claimed by the trustees, they are obviously justified, in the interest of all concerned, and primarily the life tenant herself, in retaining in their hands such sums as may reasonably be requisite for the protection of the principal fund. Obviously, however, such arrearages will constitute a primary lien upon the entire fund and must be made up to the life tenant as soon as moneys therefor are available. (*Matter of Chauncey,* 119 N. Y. 77, 85; *Matter of Wolff,* 79 Misc. 177, 179, 180.) If any dispute exists as to the facts relative to the trustees' holdings, these may be brought on for hearing by the life tenant in the usual manner.

One of the respondents, who may be entitled to receive a part of the remainder, if there is any, upon the death of the life tenant, has suggested that the allowance to the widow of $3,600 per year may be too high, in view of a change of living costs since the prior

determination of this matter. This, if seriously asserted, obviously presents a question of fact for decision, the issue in respect to which the court would remit to a referee for hearing and report. Since the presumption of a continuance of conditions so recently determined carries with it a strong inference that the sum awarded is presently reasonable, the court would be inclined to grant an application to compel the non-resident remainderman to furnish security for costs in the event that she elects to litigate the question.

Proceed accordingly.