## IN RE TRUST CREATED BY WILL OF ELLA B. TUTHILL.
## LESTER R. BICKFORD v. NORMAN L. WICKLOW.

76 N. W. (2d) 499.

April 13, 1956—No. 36,736.

*Leach & Leach,* for appellant.
*Nelson, Casey & Tripp,* for respondent.

KNUTSON, JUSTICE.

The facts essential to a determination of the issue involved in this appeal may be briefly stated. By her will, Ella B. Tuthill created a trust primarily for the benefit of her incompetent son, Eugene Thomas Tuthill, the remainder to go to her son Blaine Andrews Tuthill and his children upon the termination of the trust at the death of Eugene. The material portions of the will read:

"All the rest, residue and remainder of my estate, real, personal or mixed, and of every kind, nature and description, I hereby give, devise and bequeath to Hans Halverson of Owatonna, Minnesota, in trust however, and for the following uses and purposes, to-wit:

"* * * that out of the income therefrom, he use such portion thereof as is necessary for the reasonable and proper care of my said son, Eugene Thomas Tuthill, and that in case it becomes necessary, that he have the right to use such portion of the principal or corpus of said Trust estate as may be necessary for the care and support

and maintenance of said Eugene Thomas Tuthill for and during the life of said Eugene Thomas Tuthill."

The house of the testatrix in Owatonna on termination of the trust is thereafter given to Blaine Andrews Tuthill, whom she refers to as her beloved son, and the balance is given to the children of Blaine Andrews Tuthill.

The will then reads:

"It is further provided that the forty (40) acres described as * * * [the description is immaterial], on which my son Eugene Thomas Tuthill has a cabin, be not sold or leased but that the same be kept if possible, for the benefit and use of my said son, Eugene Thomas Tuthill, during his life time."

With respect to the appointment of a trustee, the will provides:

"It is further provided that in case for any reason Hans Halverson does not act as Trustee herein or as executor of this will, or that it should become necessary that a new or succeeding Trustee or Executor of this Will be appointed, that the Court appoint some suitable or proper person to be Trustee, of said Trust or executor of this Will, but that in no event that my nephew, John Tuthill, be so appointed. I also request that if the appointment of a guardian should be necessary for my said son, Eugene Thomas Tuthill, that said Hans Halverson or some other suitable and competent person be appointed, but that in no event that my nephew, John Tuthill, be so appointed."

The trust property consisted largely of two farms, referred to in the record as the north farm and the south farm, the legal description of which is immaterial, and a home in Owatonna.

Hans Halverson originally was appointed guardian for Eugene and trustee under the trust. As trustee, he established a plan of paying $150 per month for the care and maintenance of Eugene. Halverson later resigned both as guardian and trustee, and Norman L. Wicklow was appointed guardian and Lester R. Bickford trustee.

Because of an accumulation of medical and other expenses, the income from the property became insufficient to meet expenses, and in 1955 the trustee filed a petition for authority to sell the interest

of the trust in the south farm. At the same time, the guardian for Eugene filed his petition for a license to sell the interest of Eugene in this farm. The farm contained about 159 acres of land. Eugene owned an undivided one-sixth interest in one 80 thereof, and the trust owned the balance of the farm. Eugene's interest was subject to a mortgage of $1,000, and the interest of the trust was subject to another mortgage of $9,000. It was estimated that the farm was worth about $150 per acre.

The question then arose as to how the will and trust should be construed with respect to payments to be made by the trust for the care, support, and maintenace of Eugene while he had property of his own which could be used for that purpose. It was the contention of the guardian that all expenses for support, care, and maintenance of Eugene should be paid out of the trust without regard to the property owned by him, and it was the contention of the remaindermen that Eugene's property should first be used for his care, support, and maintenance before the trustee was called upon to pay the same. The trial court held:

"That said trust instrument is construed and interpreted to mean that the said trustee shall pay so much as is reasonably necessary for the care, support and maintenance of Eugene Thomas Tuthill to the extent only of being that amount over and above any assets of Eugene Thomas Tuthill that can be converted to the care, support and maintenance of Eugene Thomas Tuthill within a reasonable time and without sacrifice of the value thereof. That it was the intention of the Testatrix in said trust instrument that the assets of Eugene Thomas Tuthill should be first used for his care, support and maintenance."

The applicable law has been stated frequently and is not in dispute. In the interpretation of a testamentary trust the controlling rules are stated in In re Trusteeship Created Under Will of Ordean, 195 Minn. 120, 125, 261 N. W. 706, 708, as follows:

"It is of course elementary that language free from doubt leaves no room for construction or interpretation. The 'cardinal rule of

construction, to which all others must bend, is that the intention of the testator, as expressed in the language used in the will, shall prevail, if it is not inconsistent with the rules of law. Such intention is to be gathered from everything contained within the four corners of the will, read in the light of the surrounding circumstances. One of the highest duties resting upon a court is to carry out the intentions of a testator expressed in valid provisions not repugnant to well-settled principles of public policy. * * * What is sought is not the meaning of the words alone, or the meaning of the writer alone, but the meaning of the words as used by the writer.' 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 10257. It is 'the dominant intention to be gathered from the instrument as a whole,' not isolated words, that should guide us. And we are required to place a reasonable and sensible construction upon the language used; hence 'canons of construction are only aids for ascertaining testamentary intent and are to be followed only so far as they accomplish that end.' *Id.* pp. 864, 865."[1]

The precise question presented here apparently has never been before this court but has been considered frequently by other courts. The cases are collected in Annotations, 101 A. L. R. 1465 and 2 A. L. R. (2d) 1431.[2] Nothing would be accomplished by attempting to discuss or reconcile the cases on this subject. About all that can be said is that authorities may be found to support any view.

In the construction of language used in a testamentary trust, precedents are not of great value.[3]

The guardian relies quite heavily on Matter of Gatehouse, 149 Misc. 648, 267 N. Y. S. 808, but it is apparent that even in New

[1]See, also, In re Trusts Created by Butler, 223 Minn. 196, 26 N. W. (2d) 204, 172 A. L. R. 977; In re Trust Under Will of Cosgrave, 225 Minn. 443, 31 N. W. (2d) 20, 1 A. L. R. (2d) 175; In re Trusteeship Created by Fiske, 242 Minn. 452, 65 N. W. (2d) 906.

[2]See, also, 1 Scott, Trusts, § 128.4; Restatement, Trusts, § 128; 33 Am. Jur., Life Estates, Remainders, and Reversions, § 252.

[3] In re Trust Under Will of Cosgrave, 225 Minn. 443, 31 N. W. (2d) 20, 1 A. L. R. (2d) 175; Matter of Gatehouse, 149 Misc. 648, 267 N. Y. S. 808; In re Estate of Worman, 231 Iowa 1351, 4 N. W. (2d) 373.

York, where this question has arisen most frequently, cases may be found to support either view.[4]

While it is useless to attempt to distinguish or reconcile the cases on this subject, it is apparent in many of the reported cases that the trust gives to a life beneficiary an absolute right to the income, with the additional provision that, if the income is insufficient to support such beneficiary, as much of the corpus of the trust may be used as is necessary to accomplish that purpose. A good example of such language is found in Matter of Gatehouse, 149 Misc. 648, 649, 267 N. Y. S. 808, 810, upon which the guardian strongly relies. The trust in that case provided:

"To pay the entire income therefrom to my wife * * * for and during her natural life, and should the income prove insufficient to maintain my wife in her accustomed style of living, then I direct my Trustees in their discretion to apply from the principal so much as may be necessary to maintain my wife in her accustomed style of living."

Under language similar to the above, many of the cases have held that there is an absolute gift of the income without regard to the property or income of the beneficiary but that there may be an invasion of the principal only on a showing of actual need.[5] In those cases, the question before us arises most frequently only when an attempt is made to invade the corpus of the trust.

In the case now before us, the trial court made no distinction between use of income and principal of the trust. However, the language used here does not give the beneficiary an absolute right to the income. The will first directs the trustee to manage and control the trust property and to invest and reinvest such portion of

[4]In the Gatehouse case the court said (149 Misc. 650, 267 N. Y. S. 811): "Under ordinary circumstances, as has been pointed out on innumerable occasions, particular precedents are substantially valueless in testamentary interpretation," and thereafter proceeded to discuss the most frequently cited cases which have passed upon this question in the State of New York. For a discussion of this case, see 47 Harv. L. Rev. 1073; 18 Minn. L. Rev. 607.

[5]Cf. Estate of Ferrall, 41 Cal. (2d) 166, 258 P. (2d) 1009; First Nat. Bank of Beaumont v. Howard, 149 Tex. 130, 229 S. W. (2d) 781.

128

it as may be necessary and then authorizes the trustee "out of the income therefrom, he *use such portion* thereof *as is necessary* for the reasonable and proper care of my said son." (Italics supplied.) The most that can be said of this language is that the trustee was given discretionary power to determine how much of the income should be used for such support. There is no absolute gift of the income except to the extent that it is deemed necessary for the support of the son of testatrix. When it comes to use of the corpus, the language is even stronger. It provides that, "in case it becomes necessary," the trustee shall have the right to use such portion of the principal or corpus "as may be necessary for the care and support and maintenance" of Eugene.

Coupled with the use of such language, we must keep in mind the objects the testatrix sought to accomplish. There is no doubt that her first consideration was to see that her incompetent son had adequate support, even if it became necessary to exhaust the entire estate. With respect to the 40-acre tract on which Eugene had a cabin, she provided in her will:

"It is further provided that the forty (40) acres described as * * * [here follows the description], on which my son Eugene Thomas Tuthill has a cabin, be not sold or leased but that the same be kept *if possible,* for the benefit and use of my said son, Eugene Thomas Tuthill, during his lifetime." (Italics supplied.)

By the use of the words "if possible," she must have had in mind that it might become necessary to sell even this 40-acre tract. If we were to visualize a situation where that became necessary, we do not believe that anyone would contend that the trustee would be obliged or would be permitted to sell such 40-acre tract while Eugene had a separate income of his own. While that observation may not be determinative of the issues involved here, it does cast some light on the intention of testatrix.

It is quite obvious that, next to providing support for Eugene during his lifetime, the testatrix wanted to leave her remaining property to her "beloved son," Blaine Andrews Tuthill, and his children. Her love, affection, and faith in Blaine were manifested in

more ways than one. She gave him her homestead "if the same has not been disposed of." She gave his children all the remaining residue. She provided in her will:

"* * * it is my wish and desire that Blaine Andrews Tuthill continue to operate the farm as he has done in the past, if said Blaine Andrews Tuthill desires to do so, and handle same in a manner satisfactory to said Trustee."

On the other hand, the testatrix manifested a lack of confidence in her nephew, John Tuthill, by providing in her will that in no event should John Tuthill be appointed as trustee of her trust or executor of her will and that, in case it became necessary to appoint a guardian for her son Eugene, in no event should her nephew, John Tuthill, be so appointed.

While there is much speculation in the briefs, and no evidence in the record, as to whether John Tuthill would be an heir of Eugene or who the heirs of Eugene would be upon his death, it is clear that the testatrix was specific regarding to whom she wanted to pass her property. The only substantial property owned by Eugene was a small undivided interest in the land in which the testatrix owned the remaining interest. It is hardly likely that she did not know what property Eugene owned. It also seems unlikely that she intended that he could retain the income from his share of the land, as well as the proceeds from a sale thereof, without using it for his support before calling on the trust when she used the words "out of the income therefrom [the trust], he [the trustee] use such portion * * * as is necessary" for the reasonable and proper care and support of Eugene.

It seems clear to us that, taking the will as a whole, it was the intention of testatrix that only so much of the property of the trust, income or corpus, be used as was necessary to furnish proper care, support, and maintenance for Eugene over and above that which he was able to furnish for himself.

The guardian argues that, inasmuch as the testatrix left Eugene five dollars as a separate bequest, she manifested an intention of permitting him to have a separate estate. She also left Blaine five

dollars. The inference is as strong one way as the other. If she had intended to endow Eugene with a substantial separate estate, we apprehend that she would have left him something of consequence. Why she left each of them five dollars we have no way of knowing, but we do not think that it helps any in determining the intent of the testatrix with respect to the issue involved here.

We are of the opinion that the court has correctly interpreted the trust.

Affirmed.