James S. Brown,
Justice of the Supreme Court and Acting Surrogate. A construction of paragraph “ seventeenth ” of testator’s will is sought by the beneficiary of the trust created thereunder. It reads as follows: “ seventeenth: All the rest, residue and remainder of my estate, whether the same be real or personal and wherever the same may be situated, I hereby give, devise and bequeath to my trustees, hereinafter named, to be held by them in trust so long as my daughter, * * * shall live for the following uses and purposes, to wit: To hold, manage, invest and reinvest the said property, to collect and receive the income therefrom and to pay the net income in monthly installments to my daughter, * * * up to the sum of Two Hundred Seventy ($270.00) Dollars per month during her lifetime. *782 In the event that the income shall not amount to Two Hundred Seventy ($270.00) Dollars per month, them I direct my trustees to invade the principal so that the sum of Two Hundred Seventy ($270.00) Dollars per month shall be paid to my daughter. In addition to the said payment of Two Hundred Seventy ($270.00) Dollars per month, set forth above, my trustees are authorized to pay from the principal of the trust such portion thereof as in their discretion they shall deem necessary for the support, maintenance and comfort of my daughter, or because of an accident to, the illness of, or other emergency affecting my daughter.”
Testator died June 3, 1958; his will was executed on June 1, 1956. It is alleged that the testator’s daughter received by way of testamentary and nontestamentary benefits from testator’s estate the sum of approximately $19,000. The daughter alleges that during the period of June 3, 1958 to June 21, 1959 she expended for medical, dental, hospital, nurses and medical equipment the sum total of $3,198.42, and that notwithstanding such expenditures the trustees refuse to pay her any sums in excess of the $270 per month specificially provided.
Under paragraph “ second ” of the will, testator set aside one-third of his estate for his wife, out of which he gave her $2,500 outright, and the balance he placed in trust, with the income thereof payable to her for life. Upon her death, the corpus of said trust falls into the fund created under paragraph “ seventeenth ” for the daughter. Upon the daughter’s death, the remainder is given in equal shares to testator’s five sisters, two nieces, three nephews and a grandnephew, all named in the will.
All of the parties in effect concede, and the court holds, that the gift of $270 monthly to the daughter from income, and if income be insufficient, the balance from principal, is an annuity (Matter of Kohler, 96 Misc. 433, 441; Matter of Smathers, 133 Misc. 812, 817).
The daughter’s primary contention is that she is entitled to elect to take the commuted value of her annuity, based upon her life expectancy. She urges that since the testator could have foreclosed her of such right of election by directing that an annuity be purchased pursuant to section 47-b of the Decedent Estate Law, and since he failed to do so, her common-law right of election remained unimpaired.
Matter of Maybaum (296 N. Y. 201 [1947]) was decided under said section 47-b which was then in substantially its present form. The court stated at page 205: “ The common-law rule governing an annuitant’s right to elect to take the capital sum *783 in lieu of an annuity as directed to be paid distinguishes between (1) cases where the will directs the executor to pay the annuity out of the estate and (2) cases where he is directed to purchase an annuity. Where, as in the present case, the testator directs an annuity to be paid out of the estate with a valid gift over of any remainder, the beneficiary may not elect to receive in lieu thereof the capital sum necessary to produce the payments directed ” (emphasis in the original). The court there observed that the common-law rule respecting purchased annuities was changed by the enactment of section 47-b of the Decedent Estate Law, and that as there was no language directing “ the executor to purchase an annuity, this ease is governed by the common-law rule applicable to annuities payable out of the estate and accordingly the petitioner is not entitled to elect to receive the capital ” (p. 206).
In this case there is no direction to purchase an annuity and there is a valid gift over of the remainder. The court therefore construes the will as according to the daughter no right to elect to take the capital sum necessary to produce the monthly payments of $270 directed to be paid to her.
On the present basis of the fund and the daughter’s life expectancy, the daughter has submitted figures which indicate that an election by her to take the capital value of her annuity will not prejudice the remaindermen, but rather would confer a benefit upon them. Included among the remaindermen is one who is an incompetent, whose special guardian opposes the grant of the election. The other remaindermen likewise oppose such relief. While the daughter does not have the right to elect to take her annuity in a capital sum, the court, if it deemed it advisable for the best interests of children or incompetents, could undoubtedly compute and determine the commuted value of the annuity, and pay over such capital sum to the daughter and distribute the balance discharged of any lien to the remaindermen (Matter of Harris, 276 App. Div. 990, affd. 302 N. Y. 752). Nevertheless in another phase of the Harris case (sub nom. Matter of Ferris, 3 N Y 2d 70), the court observed at page 77, “ The commuting power of the courts is to be exercised when the particular facts of the particular situation justify it. ’ ’ In the court’s opinion there are no facts or figures relevant to this estate which should impel the court to exercise its discretionary power of commutation.
The fund has not earned $270 per month, and the principal has been invaded to make up the deficiency. Should testator’s widow, the beneficiary of the trust under paragraph Second, predecease the daughter, the addition of the corpus of her said *784 trust to the daughter’s1 fund may produce income in excess of $270 per month. The will does not dispose of any excess income. The daughter contends that any income earned by her fund in excess of $270 per month is her property and must be delivered to her. This would be in contravention of the terms of the will which specifically limits the monthly payments to $270. Since the will does not dispose of possible excess income, under section 63 of the Eeal Property Law any income earned in excess of $270 monthly is payable to the persons presumptively entitled to the next eventual estate (Central Union Trust Co. v. Trimble, 255 N. Y. 88; Matter of Krebs, 10 Misc 2d 867). They are the remaindermen named in paragraph Eighteenth of the will, with the remainder payable to their estates if they predecease the daughter.
The daughter further contends that in addition to the monthly gift of $270 she is entitled to receive all sums necessary for her support, maintenance and comfort and the costs of any illness, accidents or emergencies which may befall or affect her, without first resorting to her independent resources. She seeks payment of the sum of $3,198.42 in reimbursement of the expenses of her illnesses, accidents and emergencies from June 3, 1958 through June 21,1959. The respondents contend that the ability and means of the daughter’s husband and the separate estate and income of the daughter herself are proper and necessary subjects to be considered by the trustees before they may invade the principal of her fund for those purposes.
The sum of $270 monthly is an absolute gift to the daughter. But her right to any additional benefits by the invasion of principal for her illnesses, etc., is lodged in the discretion of the trustees. To obtain such additional benefits by principal invasions, it must be “ deemed necessary ” by the trustees, a condition precedent which imposes upon the trustees the obligation of considering the financial affairs of the possible recipient (Matter of Gatehouse, 149 Misc. 648, 659; Matter of Martin, 269 N. Y. 305, 313; Matter of Downey, 277 App. Div. 921; Matter of Jenkins, 116 N. Y. S. 2d 347, mod. 281 App. Div. 1066).
Although the court is of the opinion that the testator here did not intend that the daughter be required to exhaust all her resources before the trustees would be required to invade principal for her benefit, it nevertheless construes the will as imposing upon the trustees the duty of considering the financial affairs of the daughter on an application for principal invasion for her benefit, and that she is entitled to have a portion of principal applied in the event that her annuity and her independent income and resources are insufficient for her support, *785 maintenance and comfort or because of an accident to, the illness of, or other emergency affecting her (Matter of Martin, supra; Matter of Gatehouse, supra). There may be situations where a husband’s income is so extensive that trustees in the position of these trustees should consider such income, but in this case the present income of the husband, as reflected in the papers, does not require such consideration.
The pleadings of the parties in effect is a presentation of a claim to the trustees for reimbursement of approximately $3,200, and a rejection thereof by the trustees who recite that the daughter also received the sum of approximately $19,000 by way of testamentary and nontestamentary benefits from the testator’s estate. Those benefits undoubtedly had a measure of influence upon the trustees in their rejection of the claim for reimbursement. Upon such facts the court cannot say there has been an abuse of discretion by the trustees. Should the daughter however, wish to adduce proof that the trustees ’ action amounts to an abuse of discretion, bad faith, arbitrary action or fraud (Matter of Clark, 280 N. Y. 155; Matter of Hayden, 172 Misc. 669, affd. 261 App. Div. 900; Matter of Hilton, 174 App. Div. 193, 194; Matter of Schub, 6 Misc 2d 984; Matter of Leonard, 6 Misc 2d 157), the matter will be set down for hearing upon an application therefor, without the necessity of filing a formal claim for reimbursement, in the manner set forth in Matter of Carfunkel (149 N. Y. S. 2d 130).